Avert, J.
Is the indictment good, upon which the prisoner has been convicted ?
It contained at first three counts, but at the trial the prosecutor having entered a nolle upon two of them, he proceeded against the prisoner only upon the third. As a former jury in the case had returned a verdict against him for manslaughter only, which was, in effect, a verdict of not guilty upon the two first counts; upon these, it is quite clear, the prisoner could not afterwards be put to trial. He could be prosecuted, if at all, only upon the count for manslaughter. His counsel urge that this third count is defective, and if it be found upon examina *476 tion to be so, the judgment .must be reversed. The objection taken to the indictment is, that it does not charge the defendant with the crime of manslaughter, or with any offense defined by our law. There is no common law crime in this state, and we, therefore, look always to the statute to ascertain what is the offense of the prisoner, and what is to be his punishment upon conviction. The count under examination describes the crime of manslaughter at the common law; it is drawn after the approved forms adopted in the prosecution of such crimes, and is without defect as a common law indictment.
In deciding upon the objection raised, it will of course be proper to look at the crime of manslaughter as it existed under the common law. It is there defined in the following language: u- The unlawful killing of another, without malice, either express or implied ; which may be either voluntarily, upon a sudden heat, or inadvertently, but in the commission of some unlawful act.” 4 Black. Com. 191.
The word used as descriptive of the offense in the definition here given, is introduced into our statute, where it is denominated manslaughter, and where the entire description of the offense is embraced in these words, to wit: that if any person shall unlawfully kill another without malice, either upon a sudden quarrel or unintentionally, while the slayer is in the commission of some unlawful act; every such person shall be deemed guilty’of manslaughter. Swan’s Stat. 229. It is evident that the legislature had in their view, while framing the enactment above quoted, the crime of manslaughter, as well understood at the common law. They have adopted it in substance, and almost in form. If then the same rule were admitted applicable to an indictment upon a charge defined by statute, as upon a defense defined by the common law, there could be no objection to the present count. What is affirmed in this statute of manslaughter, of the character which this count was intended to reach, except that the slayer must be in the commission, at the time, of some unlawful act ? The crime is declared to be complete “ without malice,” that *477 is, where there exists no malice. Is it necessary to argue the negative form, that the act was done without malice ? If there is in the indictment no averment touching the malice, will not the inference be necessarily drawn that the act was without malice ? We think so. The same may be said of the other Word, “ unintentionally.”
It is claimed for the plaintiff in error, that there is no allegation in the count of the unlawful act designated in the statute. It was necessary to allege in the indictment that the prisoner was engaged in the commission of some unlawful act. And this allegation, it appears to the court, is distinctly made in that part of the indictment which charges the prisoner with an assault upon the person killed, and unlawfully discharging and shooting off at him a loaded gun. This sufficiently describes an unlawful act. And we are of the opinion that the count objected to is good, and charges the crime of manslaughter, as described in our statute. It may be further observed, that the statute defines and prescribes three descriptions of homicide: murder in the first, and in the second degree, and manslaughter. In the first, the act of killing is of deliberate and premeditated malice, or in the perpetration or attempt to perpetrate some one of the higher crimes specified; in the second, the act is purposely and maliciously done, but without deliberation and premeditation, and in the third, the act constituting manslaughter is as above described. Now it is held, that upon a count for even the highest species of the crime, murder m the first degree, a verdict may be returned for manslaughter, and a valid judgment against the prisoner may be rendered upon such verdict. In that case, there is not a description of the offense, as it is found in the statute; but to sustain the proceeding, a rule of the common law is applied, and the count which describes the greater offense, is supposed to include the less. The court therefore find that there is no error in .the form of the indictment.
The plaintiff in error alleges, that the second trial to which he has been subjected in this case, is in violation of that provis *478 ion of the bill of rights in the constitution of the state, which declares that in criminal prosecutions the accused shall not be twice "put in jeopardy for the same offense. He sought to avail himself of the privilege before he was put upon his trial upon the plea of not guilty, first by a motion to be discharged, and afterwards by the plea of former conviction. But the determination of the court was against him in both instances, and this is assigned as error. It is not claimed for the plaintiff in error that a conviction upon -a defective indictment, when the judgment has been afterwards reversed, can be set up as bar to another prosecution. It is conceded by his counsel that in such a case the prisoner may be put again upon his trial. In such a case he says, according to the construction of all the courts, the prisoner never was in jeopardy. But he claims that by a .trial before a lawful jury, upon a good indictment, and the finding of a verdict by that jury, the prisoner has been put in jeopardy, and cannot therefore be again prosecuted for the same offense. It is not readily perceived how any real distinction can be drawn between the cases. In both, it is but an error in the proceedings; in the first the error is found in the indictment; in the second the error is committed by the court, it may be in admitting or rejecting testimony, in charging or refusing to charge the jury, or in determining some other one of the various legal questions raised in the progress of the cause. If it be that when a party is convicted on a bad indictment for murder, he may be tried again because his life was not in jeopardy ; it may with equal truth be said, under our system of laws, and since the allowance of bills of exceptions and writs of error in criminal prosecutions, he was not in jeopardy in case any other substantial error is found in the proceedings. For in this state any other error is as fatal as that which appears in the indictment, and as effectually secures him against the consequences of a conviction. The prisoner is held liable to be tried again upon the supposition that he never was in jeopardy. This upon principle and as a correct rule of law, may be allowed to govern courts in the trials of criminals. It will operate to subject them *479 to a trial upon the merits, instead of allowing them to escape upon a mere technical defense. But though in a legal sense, they may be said never to have been in jeopardy, when the indictment was bad, yet this is not always true in point of fact, doubtless in some instance elsewhere as well as here, criminals have been tried -and convicted under a defective indictment, and have afterwards suffered the punishment of the law without ever seeking or obtaining a reversal of the judgment. ■
Still the law of the state, though it holds a party, if the first judgment against him has been reversed, to abide the issue of a second trial, must nevertheless be allowed the credit of humane maxims and principles which are continually employed in behalf of prisoners upon trial. Their rights are regarded with scrupulous care, rules and presumptions are made to operate in their favor. If the plaintiff in error could succeed upon the point which has just been considered, he would himself escape and avoid a second trial, because he had once before been tried for the same offense upon a good indictment; but new trials, often the means of safety to the accused, would then be at an end, for it would be contrary to the bill of rights to allow a second trial under a good indictment. But the statute which first authorized the reversal of judgments in criminal cases, did not regard the second trial which might result from the reversal, as a violation of the bill of rights; nor have the courts so regarded it, for they have always acted upon a different principle, and uniformly directed a second trial whenever the case seemed to require it.
Upon the trial of the question before the jury of a former conviction, complaint is made that improper evidence was received ; instead of the record, all the original papers, transcripts -of the journals of the supreme court and common pleas, etc., were admitted by the court. In this the court only followed a settled and long established practice, and even at the present term there has been occasion in more than one instance to give a sanction to the principle. Such papers and entries are good *480 evidence both in civil and criminal cases, when no formal record has been made.
The court ordered the prisoner to be arraigned and to plead to the third count of the indictment, and this is alleged as an error.
The reversal in the case necessarily put an end to the judgment, and the verdict on which the judgment had been founded ; but according to no principle could it be made to reach the prisoner’s plea. It is true, the first verdict was in effect a return of not guilty upon the two first counts; but when the cause was remanded to the common pleas it stood, as to the third count, precisely as when first at issue, and before any error had occurred. The reversal did not extend to the plea. And if the entry of a nolle prosequi as to the first and second counts, the plea interposed by the defendant of a former conviction, together with the singular issue made up for the jury, could have the effect to set aside the first plea of not guilty, then, by a direct authority in the statute, (Swan’s Stat. 726,) the court had power to impannel a jury, to try whether the prisoner was standing mute obstinately; and if they should so find, to direct the plea of not guilty to be entered, and to proceed with the trial. In all this no error is perceived.
After a verdict against the prisoner on the plea of not guilty, a, motion was made by him for a new trial, for several reasons, and amongst the rest, because the verdict was received at 2 A. M., of the 6th of December, in the presence of the prisoner, without his counsel, and without notice to the counsel, and without an opportunity to poll the jury. There is no reason for supposing that the liberty of polling the jury was denied to the prisoner. Nor is there any law making it imperative, that the counsel of the prisoner should be sent for, to be present upon the delivery of the verdict by the jury; though care ought to be taken to secure to the prisoner the benefit of his presence upon so important an occasion. There might, however, be cases in which it would be proper to dispense with the *481 presence of the counsel; and a discretion must be left to the court of common pleas upon this subject.
The court are of the opinion, upon the whole case before them, that there is no error in the record and proceedings of the court of common pleas; and their judgment is affirmed.