*STATE OF OHIO v. CHARLES HINKELMAN.

1. BULK OR WEIGHT OF EXHIBITS NO EXCUSE FOR ELIMINATION FROM RECORD ON REVIEW.

Mere bulk or weight of exhibits offered in evidence on the trial ' of a criminal case is no excuse for failure to attach to a bill of exceptions or mark for identification on review on the weight of evidence.

2. FAILURE TO SIGN CERTIFICATE OF RECORD OF LOCAL OPTION ELECTION INVALIDATES IT AS EVIDENCE.

Failure of the county clerk to sign his certificate of the record of a county local option election showing that the county had voted dry, as required by Sec. 1 of act 99 O. L. 35, constitutes a defect in the certificate invalidating it as evidence; but the contention that the county had in fact voted dry may be sustained by other evidence.

3. WAIVER OF LEGALITY OF OBJECTION BY GIVING WRONG REASON FOR SUSTAINING THEREOF.

Counsel for accused having given a wrong reason for sustaining an objection to the introduction of evidence offered waives all other reasons therefor whether valid or invalid.

4. EVIDENCE OF DETECTIVES IN LIQUOR PROSECUTION HAVING NO PECUNIARY INTEREST ON CONVICTION GOVERNED BY SAME RULES AS OTHER WITNESSES.

Evidence of detectives in a prosecution for violation of the Rose county local option law is governed by the same rules and

*Affirmed, no op., *Hinkelman* v. *State*, 83 O. S. 446.

1 O. C. C. Vol. 32

Wyandot County.

entitled to the credence to which other witnesses are entitled
under like conditions, especially in cases where payment of
their compensation, is not dependent on conviction of accused.

5. ACCUSED SALOON KEEPER'S TESTIMONY VIEWED WITH CAUTION IN
PROSECUTION FOR VIOLATION OF ROSE LAW.

Testimony of accused in a prosecution for violating the Rose
county local option law, he having been a keeper of a saloon
prior to a local option election and having conducted a business
in all respects the same after the county in which he is situated
votes dry, may be properly viewed with caution and measured
by his bias in his own favor.

[Syllabus approved by the court.]

ERROR to Wyandot common pleas court.

*L. M. Bowers, J. A. White* and *H. H. Newell,* for plaintiff
in error.

*Meck & Stalter,* for defendant in error.

## HURIN, J.

These cases—thirteen in all—brought by the state against
the following defendants, respectively, No. 402, Charles Hinkel-
man; No. 403, John Snyder; Nos. 404, 405, 406, Ed. Ritter; No.
407, Charles Feeley; Nos. 408, 409, Nicholas Wagner; No. 410,
Frank Haupt; No. 411, Theodore Bolish; No. 412, Joseph
Bolish; No. 413, John Scheidegger; No. 414, Anthony Strasser,
arose out of alleged violations of the liquor laws applicable to
dry territory.

All of the defendants in error were convicted before the
mayor and fined in varying amounts. All of these judgments
of conviction were reversed by the court of common pleas, on
the ground that the trial court erred in overruling the motions
for new trial and that the finding and judgment of the mayor
were not supported by the evidence.

In all the cases except those against Hinkelman and Snyder
a third ground is assigned, *viz.,* that the mayor erred in re-
stricting the cross-examination of the witnesses for the state,
W. B. Drake and J. A. Reasoner. The state now prosecutes
error in this court seeking to reverse the judgments of the
mayor.

While the cases are all liquor cases and many of them are
based upon very similar evidence, they appear upon examina-

State v. Hinkelman.

tion to differ in certain particulars, and for convenience they may be classified in various groups, yet all considered together.

The cases of Charles Hinkelman and John Snyder arose under the search and seizure law, act 98 O. L. 12, this charge being in effect that certain intoxicating liquors, etc., were kept in buildings occupied by defendants, and for the purpose of being sold, furnished or given away as a beverage in violation of the county local option law, act 99 O. L. 35, in Wyandot county. In all the other cases the offense charged is the unlawful selling of intoxicating liquors as a beverage.

In the cases against Ed. Ritter and Nicholas Wagner, two or three separate sales made within a few minutes of each other are made the basis of separate charges, and in the case of Joseph Bolish four such separate sales though originally alleged as separate complaints, were afterwards consolidated by agreement as separate counts in the same indictment.

As the motions for new trials were practically identical in all the cases and as the overruling of these motions by the mayor is assigned in each case as one cause of the reversal of the mayor's judgment, and as in all of the cases, the judgments were found by the court of common pleas not to be supported by the evidence, it has been necessary for this court to examine all of the bills of exceptions in order to determine whether the court of common pleas was justified in so reversing the judgments of the mayor.

An examination of those bills of exceptions shows at once that in three of the cases, viz, the Hinkelman, Snyder and Feeley cases, the bills of exceptions were incomplete and did not contain all of the evidence and hence, that the court of common pleas could not properly reverse any of these cases on the weight of the evidence as it assumed to do.

In the Hinkelman case the bill of exceptions shows on its face that eleven exhibits were offered and admitted in evidence, none of which were attached to the bill or filed with the clerk in due form.

In the Snyder case, the bill of exceptions shows that at least fifteen exhibits were offered and admitted in evidence,

Wyandot County.

none of which were attached to the bill or otherwise properly brought before the reviewing court.

It is too well settled in Ohio to merit discussion that a bill of exceptions is not complete unless all exhibits are either attached to it or marked for identification and duly filed with the clerk so that the reviewing court may have all the evidence. *Hicks* v. *Person*, 19 Ohio 426, 446; *Busby* v. *Finn*, 1 Ohio St. 409. And it is equally well settled that unless such bill of exceptions is complete and contains all of the evidence (including such exhibits), a reviewing court cannot lawfully reverse the judgment in such case on the ground that it is against the weight of the evidence. *Hicks* v. *Person, supra; Cantwell* v. *State*, 18 Ohio St. 477; *Pitts. Ft. W. & C. Ry.* v. *Probst*, 30 Ohio St. 104.

It appears, however, that in the Hinkelman and Snyder cases, the reviewing court decided that the omitted exhibits were too bulky to be conveniently attached and were at any rate useless and therefore should be disregarded.

There is no authority of law of which we are informed that justifies such a conclusion. The mere bulk or weight of an exhibit is no reason for disregarding the express terms of the statute. It is a matter of every day experience for flasks, furniture, machinery, specimens of bricks and all sorts of other heavy materials to be admitted in evidence, and the law provides for their attestation as evidence and the disregarding of that law was error.

In the Feeley case, the defendant himself introduced certain bottles as exhibits and though they were of no great bulk or weight he failed to attach them to the bill of exceptions, and so in that case also there was no such bill before the court as justifies a reversal or a consideration of the bill as to the weight of the evidence.

But in all of these cases, the alleged error of the mayor in overruling the motions for new trials was assigned as a ground for reversal.

On an examination of the grounds assigned for these motions for new trial, we find that there was no error in the mayor's refusal to grant a new trial on any of the grounds alleged

unless it was on the ground of the admission or exclusion of evidence which includes .the ground otherwise alleged, that there was an undue restriction of the right to cross-examine plaintiff's witnesses.

In this connection it may be well to refer to one claim of error which is common to all of the cases now submitted to us except the cases against Joseph Bolish, John F. Scheidegger and Anthony Strasser, and which relates to the admission of evidence. In all the other ten cases it is claimed that the mayor erred in refusing to discharge the defendant because of the failure of proof that the county of Wyandot, had ever voted dry. In the Jos. Bolish, Scheidegger and Strasser cases, the proof on that branch of the case was complete.

In all of these other ten cases the state attempted to prove the fact by the certificate of the clerk of court as authorized by the statute.

But although that clerk in every case testified that he was "Clerk of the court of this county during the local option election held under the Rose law some time last fall," referring to the fall of 1908, thereby establishing the fact *prima facie* under the statute that there has been such an election, and though he testifies that a certificate was forwarded to him from the deputy supervisors of election, showing the result of such election, and that he made a record of that certificate on the journal of the court of common pleas, and though he read into the record and there is attached to the bill a copy of a certificate of said clerk purporting to contain a copy of such recorded certificate showing that the county had voted dry, yet the clerk failed to sign his own certificate, and so it was claimed there is no certificate at all showing such election or its result.

Such a certificate is plainly defective, and this defect would be fatal to the claim of proof on the part of the state as to the result of that election were it not for two reasons.

In the first place, every one of these ten bills of exceptions shows that at some point in the case, other evidence was admitted showing that this territory had been voted dry. Usually this was brought out by the defense in the cross-examination of

Wyandot County.

the plaintiff's witnesses; sometimes it was brought out by the plaintiff in chief.

For instance, in the Snyder case on page 25 of the bill in the cross-examination of Thomas Agen, the state's witness, he testified as follows: "They sold beer there—they used to."

"Q. 1.  How long ago?  A.  Probably just before the saloons closed up, before this dry business commenced."

"Q. 42.  That was before they voted under the Rose law in this county?  A.  Yes, sir."

And on page 74, defendant was asked, "What business were you in previous to the time in which this local option law went into effect?  A.  I was in the saloon business."

And in the Feeley case on page 79 of the bill: "Q. 73 of Feeley's Direct Examination: "How does this beer or whatever it was—this temperance beer that you sold to Reasoner and Drake on the fifteenth, compare in taste with the kind of beer we had here before the county voted against the use of intoxicating liquors?  A.  Well, if it is kept in good shape and cold, a fellow can't tell the difference."

"Q. 1.  (Cross-examination, page 80.)  What business do you say you are in?  A.  I run a restaurant and soft drink stand."

"Q. 2.  What business were you in previous to the county voting dry?  A.  I was in the saloon business, tending bar."

"Q. 5.  Are the fixtures in that place the same as they were there previous to the voting of the county dry?  A.  No, sir."

These or similar expressions appear in all of the cases. While the plea of not guilty put in issue every material allegation of the affidavit and some proof was necessary to establish every such allegation, and while it is also true that if the result of the election which had been testified to by the clerk independently of his certificate, had been disputed by the defense, such evidence as this might not have been of great weight. Yet that result was not disputed and, in the absence of any question being made as to the fact that the county voted dry, but little evidence was necessary to establish that fact *prima*

State v. Hinkelman.

*facie*, and this evidence was in each case supplied by the witnesses.

We are cited in this connection to the case of *Finney* v. *State*, 54 Bull. 432, in which a very similar question arose. The certificate there introduced to prove that the county had voted dry was not signed by the clerk, but the name of the clerk was copied in typewriting merely. This was relied upon by plaintiff in error as a failure of proof under the statutes, but the Supreme Court did not so regard it and refused permission to file a petition in error. That case was probably weaker for the state than the cases now before us for a typewritten signature to a certificate is certainly not such as the statutes usually contemplate, but the Supreme Court appears to have regarded it as sufficient in the absence of any dispute as to the fact that the county had voted dry.

But for another reason no such proof was necessary in these cases.

The state had offered what purported to be a certificate of the clerk as to the result of the local option election. That certificate was in due form under the seal of the court, and was complete in every particular except that the signature of the clerk was absent.

Objection was made by the defense to the introduction of this certificate. The court asked on what ground objection was made. Mr. Meck responded: "Because it is incompetent."

We claim that it does not lie within the power of the legislature to say what would be *prima facie* evidence of any fact in a criminal case. The presumption of evidence is with the defendant forevermore, until conviction.

This ground of objection was properly held by the mayor to be ill taken and the objection overruled.

But having given a wrong reason for his objection, the defendant waived all other reasons under the rule cited in the case of *Kent* v. *State*, 42 Ohio St. 426, 430, and as the objection to this certificate was thus waived, the proof of the result of the election was complete.

In the three cases against Joseph Bolish, John Scheidegger and Anthony Strasser, the clerk's certificate was duly signed and

Wyandot County.

this question is not raised, and so in all of the thirteen cases, this question is eliminated.

Another objection to the evidence is that in all the cases except those against defendants, Hinkelman and Snyder, the only proof of a sale of intoxicating liquors is the testimony of two detectives, and this appears to have been the principal ground on which the court of common pleas based his judgment of reversal.

It appears not only from the bills of exceptions in all these cases, but from arguments of counsel that, throughout the trials of these cases, there has been a studied and determined effort on the part of counsel and certain witnesses to belittle the effect of all evidence of detectives and especially of detectives in prosecutions for illegal sales of liquor.

It appears that this disparagement had such great weight with the learned judge of the court of common pleas, that he refused to give any credence whatever to anything testified to by either of the detectives in any of these cases; and principally because of his strong feeling against this kind of evidence, as appears from his written opinion submitted to us, he reversed all of these cases.

It may be well to say right here that there are certain legal rules relating to evidence which should be enforced in *all cases*. A liquor case should be tried under exactly the same rules as other cases. No public excitement or popular prejudice can for a moment be allowed to deflect a court from the well recognized rules of practice. Laws are made for the equal protection of all. If there has been a violation of law, it is the duty of all good citizens to aid in the punishment of the offender. To attempt to foster prejudice against officials who seek to enforce law is to nullify popular government. It destroys that protection which each citizen has the right to claim. It is anarchy. If the law is unjust, it should be repealed. While it is law, it should be enforced. Each person accused of crime is entitled to a fair trial under rules fixed and unchanging and well known. To attempt to apply one set of rules of evidence to one class of cases and to deny their applicability to other cases is to destroy all respect for law and all safety in reliance

### State v. Hinkelman.

on law for the protection of individuals and of the community.

In all of the cases now before us, the state relies upon the evidence of two detectives. The defense has attempted to discredit them.

It is a well recognized principle of evidence that the weight which shall be given to any evidence depends upon its reliability.

In the prosecution of crime, it is often necessary to rely on *detective evidence*, the evidence of men, who for a time conceal their true characters and circumstances, and do this deliberately for the purpose of misleading those who are suspected of crime. This is necessary because evidence of past crimes is always difficult to obtain and because no one intending to commit a crime or an offense against the law, will do so in the presence of any one who is known to be law abiding and unfriendly to the commission of that crime or offense. It is also necessary because few citizens are willing to incur the ill-will of their neighbors by reporting their violations of law and exposing them to punishment. Such exposure must come generally from strangers.

Detectives, therefore, are necessary, and to reject their evidence simply because they are detectives, and without regard to the inherent credibility of their story is without warrant of law or reason. But the law recognizes the fact that the testimony of any man who habitually deceives his fellowman, is to be viewed with caution. Its weight must depend on the circumstances of each particular case. If his motives can be shown to be bad, his testimony will carry little weight. If otherwise, his testimony may be entirely convincing. Detectives' testimony, therefore, must be judged exactly as any other evidence, being dependent for its effect on the circumstances under which it is offered.

In the cases before us, the state relies upon the testimony of two detectives who, in each case, testify to the character of the liquor sold, that it was intoxicating.

In each case the defendant who sold the liquor, denies that it was intoxicating. But in no case is it denied that liquor was actually sold to the detectives. In one case the time is dis-

puted. But in that case the defendant's own witnesses corroborate the detective as to the time.

In three of the cases samples of the beer found by the detectives were analyzed by a chemist and found to be intoxicating. In two of the cases where the possession of intoxicating beer could not be denied, the excuse for handling such beer in dry territory was that it was intended for private use and not for sale. Where the beer had not been scientifically analyzed each defendant denied that it was intoxicating beer and relied upon that defense. Yet in all but one of these cases, the defendant, under oath, testified that he could not tell by the appearance or taste of the beer when it was cold, whether it was intoxicating or not, and he seeks to discredit the detectives' testimony by other testimony of the same effect.

Various witnesses are called in the Strasser and Scheidegger cases, and some others to corroborate the defendants in the claim that temperance beer only was sold the detectives, but none of these witnesses testify to the fact. They can only say that they themselves had not gotten any intoxicating liquor there.

We have then the testimony in each case of two men—detectives so called—who are under pay for ferreting out violations of the liquor laws, but whose pay is proven conclusively, and by the defense in each case, to have no dependence whatever on any conviction for such violation. These men testify in each case that intoxicating liquor was sold them in violation of law. They testify that they know that this liquor was intoxicating, not only by its taste distinguished from so-called temperance beer, but by its effect on their persons, the flushing of the face, the rising of the temperature, the excitement of the nerves.

We have, on the other hand, the absolutely unsupported testimony of the defendant in each case who, while admitting that he sold the beer to the detectives, swears that he sold only temperance beer, and, in the next breath, swears that there is no difference between the two kinds of beer either in appearance or taste or effect, unless possibly when taken in great quantities.

One defendant, Joseph Bolish, is frank enough to admit

State v. Hinkelman.

that there is a great difference in the taste of the two kinds of beer. But he stands alone among these defendants.

The corroborating witnesses on whom the defendants rely, usually do swear to the same inability to detect any difference, yet they one and all speak of the intoxicating beer as *good* beer and many of them do express preference for that kind, and some even are frank enough to admit, with Joseph Bolish and the detectives, that there is a vast difference both in the taste and effect, and some even go so far as to say, as Chas. Shuler does in the Bolish case, that temperance beer is "no good."

Such evidence as this does not strongly corroborate the claims of the defendants. Their own evidence is intrinsically weak. Their own witnesses fail to corroborate them as to the fact of the character of the beer sold to the detectives. They only *seek* to discredit the evidence of the detectives as to the possibility of recognizing the intoxicating beer by its taste or effect; and all of this evidence bears on its face the effect of a lack of candor and is, in at least one case, expressly discredited by the one witness of them all who appears to be entirely candid and truthful.

It is true that in some of the cases, witnesses other than the defendants, do seek to corroborate the defendants by testifying that what was sold was not intoxicating beer. But not one of these witnesses knows as a fact that it was nonintoxicating beer. Their only authority for their assertions is the fact that they had tasted none but "*temperance* beer" there or that the bottles were labeled "temperance beer," or that the beer was supposed to be "temperance beer." Such evidence is absolutely worthless as proof of the character of the beer actually sold.

But if the evidence of the detectives is to be received with caution, what is to be said of the defendants?

The caution justly exercised toward the evidence of detectives is due, as has been said, to the position of apparent bias in which they stand by virtue of their employment—their supposed interest in proving a conviction. The same rule of caution must be applied to each of the defendants. Each by his

Wyandot County.

testimony is seeking to avoid punishment for an alleged offense against the law, a punishment which may be expressed in terms of hundreds of dollars. As a defendant he is in law presumed to be innocent until proven guilty. But when he goes on the witness stand, his testimony must be viewed exactly as that of any other witness. If he is in a position to be biased, or if he has a financial interest in the issue of the case, or if his interest would naturally lead him to depart from the truth, his testimony must be viewed with the same caution as that of any other prejudiced person, yet not with discredit unless shown to be suspicious.

How stand these cases then? In one case, the Hinkelman case, there is the additional proof that at the time of the seizure of the goods under the search warrant, the defendant destroyed one or more bottles of liquor. This under Section 4 of the search and seizure act, 98 O. L. 12, was *prima facie* evidence that the liquor was intoxicating and that it was intended for unlawful sale.

In various other cases a *prima facie* case was made under Sec. 12 of the same act, that liquors were kept for unlawful sale, by the proof of payment of the United States special tax as a retail dealer in intoxicating liquors.

Two detectives who are shown *by the defense* to have no financial interest in a conviction—for they receive their pay whether a conviction or an acquittal results—swear that liquor, intoxicating liquor, was sold to them by each of the defendants.

Each of the defendants, interested to the extent of a possible fine of hundreds of dollars, testifies that the sale admittedly made was not a sale of *intoxicating* liquor, but of something so like it that he cannot tell the difference.

Each of these defendants has put himself under suspicion by conducting a business in all respects like that which he conducted in the same place before the county voted dry when he admittedly sold intoxicating liquors at the sale place and in the same way, and he now seeks to have the court believe that he cannot tell what he is selling, yet swears that it is not intoxicating.

If any witnesses are ever to be viewed with caution, we

### State v. Hinkelman.

think that these defendants have earned that distinction and we are not of the opinion that the trial court erred in believing the evidence of the detectives in preference to such evidence as that of these defendants, nor is the so-called corroborating testimony of defendants' witnesses much stronger. They are one and all habitues of the defendants' resorts, bound by a well recognized obligation of comity to support defendants to the utmost extent of their ability and they unfortunately appear to have stretched that obligation of comity to unreasonable bounds; for they, some of them at least, attempt to testify to the most minute details of the conversation and actions of the defendants on particular dates, yet show an utter inability to recall anything else that occurred on the same occasions or on similar occasions to which their attention was called. Such evidence does not greatly strengthen the defendants' case.

There are certain of these cases, however, in which the evidence of the detectives is palpably weak. In two of the cases against Ed Ritter, the detectives testified that one of them bought two glasses of intoxicating beer of Ritter at 5:25 P. M. on June 22 and that the other then—three minutes later, bought two more glasses of intoxicating beer.

On each of these purchases a case is founded. Strictly speaking, they were separate sales, that is, sales to two different people, but in fact it was all one transaction, and while we would not wish to be understood as laying down a rule applicable to all such cases, we are of the opinion that a conviction is not warranted in both of these cases when the two transactions were practically synchronous.

We are cited by counsel to cases in which it has been held that proof of a single sale is sufficient without proving a series of sales to constitute the offense of unlawfully keeping a place where intoxicating liquors are sold at retail. But here the charge is not that of keeping a place but of selling intoxicating liquors, and there should be no double conviction for the same offense. The same criticism is true in the case against Nicholas Wagner. He is convicted of selling intoxicating liquor to J. A. Reasoner at 7:35 P. M. on June 16, and to W. B. Drake, the other detective, at 7:40 on the same evening. In each case one of

the detectives treated the other and then that other *immediately* treated the first. But separate charges are made for each treat. This seems to be pressing zeal too far.

The same is true of the charges against Joseph Bolish. He is charged with one sale to Drake at 10:25 P. M. on June 16 and another to Reasoner at 10:30 P. M. on the same day, and with two similar sales on June 15 at 11:25 P. M., and 11:30 P: M., respectively. Here, as in the other cases, but on two different evenings, each detective treated the other and was in turn immediately treated by the other.

As in the cases against Ritter and Wagner, we regard these four alleged offenses as in reality only two, one on June 15, and one on June 16. But in the case against Joseph Bolish, another question is of importance. It is claimed that there was an undue restriction of the right of cross-examining the prosecuting witnesses, and this was error. In this case the defendant's attorneys attempted to cross-examine the prosecuting witnesses as to their proceedings on the day on which the offense was charged. They were questioned as to where they had been on that day, what saloons they had entered, what liquors, if any, they had drunk. Objection was made apparently on the ground that this was an attempt to ask for information merely in order to prepare defenses in other cases.

Were we certain that such was the purpose of the questions asked, we might agree with the trial court in his excluding of such testimony. But the questions also bore directly upon the question as to the condition of these witnesses at the time they claimed to have gotten the drinks from Joseph Bolish, whether they were intoxicated then or not. They had testified as to certain of their actions, the defense had the right to test their veracity by a reasonable cross-examination as to where they had been and what they had done that day.

We are all of us of the opinion that such rigid restriction of cross-examination was error for which this case should be reversed. The same objection is also made in all of the other cases except those against Hinkelman and Snyder. But in none of these other cases was there the same strictness exercised. It is true that in some of them defendants were prevented by

State v. Hinkelman.

the court from asking how much beer was drunk at Kirby on the day in question. But the court then permitted the fullest cross-examination as to what was drunk in Upper Sandusky both before and after the trips to Kirby. As five or six hours had elapsed after the return from Kirby to Upper Sandusky, the question of what had been drunk before that time, and where it was obtained was not material.

Again in some of the cases there was an objection sustained to the cross-examination as to the conduct of Drake in going to Indianapolis on a certain occasion. This was long after the offense for which the defendants were being tried.

The actions of Drake on that occasion could have no bearing on this case and such cross-examination was properly excluded. From this consideration of these cases a majority of the court is of the opinion that all of these thirteen cases should be reversed except three.

In the case of the *State* v. *Bolish,* the judgment of the court of common pleas reversing the judgment of the mayor will be affirmed on the ground that there was an undue restriction of cross-examination, and because four actions were founded on what were in fact only two transactions.

In the case of the *State* v. *Ritter,* No. 405, the judgment of the court of common pleas will be affirmed because the transaction there charged as an offense was the same as that charged in case No. 404.

For the same reason case No. 409, being the case of *State* v. *Wagner,* will be affirmed.

All other cases will be reversed.

**Kinder, J.,** concurs.

**Donnelly, J.,** dissents.