20

The State of Ohio, Appellant, *v.* Williams, Appellee.

[Cite as State v. Williams (1974), 39 Ohio St. 2d 20.]

(No. 74-39—Decided July 3, 1974.)

*Mr. Thomas J. Carnes,* for appellant.
*Mr. J. Franklin Spruill,* for appellee.

HERBERT, J. By virtue of Section 6, Rule III of this court's Rules of Practice, when a case is certified to this

court upon the constitutional basis of conflict, the rule of law upon which that conflict exists must be "clearly set forth in the journal entry or opinion of the Court of Appeals;" otherwise, a remand to the Court of Appeals can result. See *Masheter* v. *Hoffman* (1971), 26 Ohio St. 2d 267, 271 N. E. 2d 259. However, we note that appellee was arraigned upon his indictment on April 12, 1971, for a crime he was found to have committed on or about November 6, 1970. The reason for this sad delay does not appear in the record, but we are constrained not to add to it.

The question before us is whether the trial court's violation of R. C. 2945.33 requires reversal of the conviction entered in the proceeding, even though the record contains no indication that the defendant was thereby prevented from having a fair trial, and it is agreed that the defendant did not object to the trial court's action.

R. C. 2945.33 provides:

"When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court, except in cases where the offense charged may be punishable by death, may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court. Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation. Upon the trial of any prosecution for misdemeanor, the court may permit the jury to separate during their deliberation, or upon adjournment of the court overnight.

"In cases where the offense charged may be punished by death, after the case is finally submitted to the jury, the jurors shall be kept in charge of the proper officer and proper arrangements for their care and maintenance shall be made as under Section 2945.31 of the Revised Code."

This statute, or its predecessors, has previously been before this court. In *Parker* v. *State* (1868), 18 Ohio St.

88, the trial court, with defense counsel's consent, permitted the jurors to separate for meals after the case had been submitted. This court reversed the conviction, holding that the common law prohibited separation under those circumstances. Additionally, the court noted that although court-appointed defense counsel had consented, the defendant was not present, had no knowledge of the proposed separation and gave no consent thereto. Furthermore, it was observed that a defendant, either personally or through his counsel, should not be put in the position of having to refuse consent to juror separation under circumstances which would excite "unkind feelings in the breasts of jurors who held his fate in their hands." *Id.*, at page 91.

The following year, subsequent to the adoption of the Code of Criminal Procedure, *Cantwell* v. *State* (1869), 18 Ohio St. 477, was decided. Interpreting the new code, the court held that it was error for a trial court to permit jurors trying felonies to separate at any time after being sworn. Adhering to *Parker, supra*, the court also held that the defendant's consent to such separation was irrelevant.

As can be seen, under both the common law and the 1869 Code of Criminal Procedure, criminal court jurors were forbidden to separate from the time they were sworn until after being discharged. However, over the years the General Assembly relaxed the rigidity of this rule, and in *Warner* v. *State* (1922), 104 Ohio St. 38, 135 N. E. 249, this court addressed itself to the statute as it was then worded.

*Warner* involved certain jury admonishment requirements then in the statute, as opposed to the separation aspects of the enactment. However, by that time the law clearly permitted separation during adjournment of court overnight, either before or after submission, and it was also apparently interpreted to allow separation at any time before submission, provided the statutory admonitions were given jurors by the trial court. The record in *Warner* established that the jurors had been admonished, but not in accordance with the statute. The syllabus of that case states:

24

"The failure by a court to perform its statutory duty of admonishing the jury concerning their conduct while separated during the trial, does not constitute reversible error, where it is not shown that the jury were in fact guilty of misconduct or indiscretions and where it further appears that counsel for plaintiff in error observed the omission and did not call the attention of the court thereto."

At page 42 in the opinion in *Warner*, the *Parker* case was discussed, as follows:

"* * * In the case of *Parker* v. *State*, 18 Ohio St. 88, it was held reversible error to permit the jury to separate after the cause was submitted, even though counsel for the prisoner consented thereto. If the declarations in that case should be held to be sound at this time, it must be regarded as an authority entitled to great weight in the instant case, because it will be found that the provision requiring the jury to be kept together after submission is contained in Section 13688, General Code, and is couched in the same peremptory language as that portion of the section hereinbefore quoted. We do not think, however, that that case is consonant with the modern doctrine of disregarding those technical rules and irregularities which do not materially affect the substantial rights of the defendant. That case was decided at the December, 1868, term of this court, and before the criminal code had been enacted. The criminal code was enacted May 6, 1869, and in Section 192 of that Code, now Section 13745, General Code, statutory provision was for the first time made for specific grounds of new trial in criminal cases, and the law was then enacted as it has ever since existed that a new trial may be granted on the application of the defendant 'for any of the following causes affecting materially his substantial rights.' So far as we can discover this question has not since 1868 been argued in this court, and if that question was presented in the instant case we would refuse to be bound by the authority of *Parker* v. *State, supra.* We are compelled to make this comment, because it must be conceded that the principle in that case is identical with the principle in the case at bar. Whether this court would have so decided the

case of *Parker* v. *State* if the court had been limited to only those reasons 'affecting materially his substantial rights' we can not say at this time, but we do have the right to say that this court would not at this time so decide. * * *''

Although *Cantwell* v. *State, supra* (18 Ohio St. 477), is not mentioned, it can safely be assumed that the *Warner* court was equally disenchanted with the result announced in *Cantwell*.

The *ratio decidendi* of *Warner* prevails as the law today. In the great majority of cases, a complaining party must timely object to the error he feels is being committed and must, upon review, demonstrate that he has been prejudiced by its commission. *State* v. *Childs* (1968), 14 Ohio St. 2d 56, 236 N. E. 2d 545, paragraph three of the syllabus; *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107, 233 N. E. 2d 137, paragraph one of the syllabus.

In *State* v. *Glaros* (1960), 170 Ohio St. 471, 166 N. E. 2d 379, the trial court ignored the peremptory language of R. C. 2945.27 and no objection was made to the error. The syllabus in that case reads:

''1. It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.

''2. Where the trial court fails to comply with the requirement of Section 2945.27, Revised Code, that oaths or affirmations be administered to prospective jurors before their examination on *voir dire*, such failure will not entitle defendant to a new trial if defendant and his counsel could have called such failure to the trial court's attention in time to avoid it but neither defendant nor his counsel did so.

''3. Where it does not appear that any false answer was given by a juror on the *voir dire* examination, the mere failure of the trial court to have either oaths or affirmations administered to prospective jurors before such examination as required by Section 2945.27, Revised Code, cannot

be held to have prejudiced a defendant or prevented him from having a fair trial, and a judgment of conviction should not be reversed because of such failure. (Section 2945.83, Revised Code, applied.)''

At page 475 in the *Glaros* opinion, the late Chief Justice Taft stated:

''Unquestionably, the trial judge should have avoided the error of failing to have an oath or affirmation administered to prospective jurors, as required by Section 2945.27, Revised Code, just as a trial judge should avoid all errors in the course of a trial. If counsel for the defendant had requested the trial judge to avoid that error and the trial judge had refused to do so, then clearly this defendant should be able to rely upon such error as a ground for reversal of his conviction. * * * However, we do not believe that we should, without some good reason or unless required to do so by some applicable statute * * * approve a practice which would enable counsel to place his client in a position where he could take advantage of a favorable verdict and, at the same time, avoid an unfavorable verdict merely because of an error of the trial judge that counsel made no effort to prevent when he could have made such effort and when such error could have been avoided. Such a practice would enable counsel to obtain for his client more than the one fair trial to which he is entitled. * * *''

The reasoning expressed in *Warner* and *Glaros* is still persuasively sound. Therefore, a noncapital felony conviction will not be reversed for error in permitting the jurors to separate for lunch after the cause has been submitted to them, where it is not shown that the defendant was thereby prevented from having a fair trial and where the defendant did not object to the separation.

One point not involved in *Warner* or *Glaros* requires discussion. Both *Parker* v. *State, supra,* and *Cantwell* v. *State, supra,* expressed concern for a defendant who is forced to object to jury separation under circumstances which could arouse anger in jurors and prejudice one of them against him. Assuming the correctness of our appraisal of present day human nature, it is apparently one

aspect of life that has not changed significantly in the 106 years since *Parker*. The defendant in this case voices the same apprehension as did the defendant in *Parker*, and we agree that the potential for mischief under these facts is very real. Jurors are forced to spend many hours together and often must endure days in uncomfortable situations and surroundings. It would be naive to suppose that none of them could harbor some ill feeling toward a defendant whose objection prevented them from enjoying even a solitary stroll during daytime breaks in their deliberations. However, this argument assumes that some trial courts are going to continue to ignore the mandatory language of R. C. 2945.33 and are going to do so under circumstances which will portray a defendant as the villain who unsuccessfully seeks to force the jurors to spend extra hours together. This would be an unfair assumption and is one which we will not make. Furthermore, the defendant could easily have placed his objection in the record during a side-bar conference, or while the jury was out of the courtroom. Had this been done, and had the court still disregarded the statute, even minimal evidence of exposure of a juror to improper influence would have sufficed to establish the prejudice required to overturn the conviction. Cf. *Emmert* v. *State* (1933), 127 Ohio St. 235, 187 N. E. 862; but see *Williamson Heater Co.* v. *Radich* (1934), 128 Ohio St. 124, 190 N. E. 403, paragraph one of the syllabus.[2]

The judgment of the Court of Appeals is reversed, and the judgment of the Court of Common Pleas is affirmed.

*Judgment reversed.*

O'NEILL, C. J., CORRIGAN, STERN, CELEBREZZE and P. BROWN, JJ., concur.

---

[2] Of course, other series of events can be envisioned, one of which finds a trial court sustaining the defendant's objection and revoking permission to separate. This would result in obedience to R. C. 2945.33, but could precipitate grounds for a mistrial if improperly done. All these problems and pitfalls can be avoided, however, by the simple practice of discussing jury sequestration at a pre-trial conference and arriving at an understanding concerning the proper application of R. C. 2945.33 and our decision herein.

WILLIAM B. BROWN, J., dissenting. The majority opinion aptly traces the development of jury sequestration principles from the common law rule "that the jury be kept together without meat or drink until a verdict was reached. (3 Blackstone, 375)." *People* v. *Wilson* (1948), 400 Ill. 461, 477, 81 N. E. 2d 211. However, I am not convinced by the majority's holding that the principles have eroded to the extent that a defendant in a felony case must make a prior objection and affirmatively show prejudice where the trial court has clearly violated R. C. 2945.33.

The only cases cited by the majority which involved the precise question presented herein are *Parker* v. *State* (1868), 18 Ohio St. 88, and *Cantwell* v. *State* (1869), 18 Ohio St. 477. The clear holding of those cases is that no objection is required, and prejudicial error is to be presumed, where jurors are permitted to separate for meals after the case has been submitted to them.

The implicit grounds for departing from the rule established in *Parker* and *Cantwell* would appear to lie in the following quotation by the majority from *Warner* v. *State* (1922), 104 Ohio St. 38, 42: "* * * We do not think, however, that that case [*Parker*] is consonant with the modern doctrine of disregarding those technical rules and irregularities which do not materially affect the substantial rights of the defendant."

I do not agree that the foregoing reasoning is "still persuasively sound." Whatever the "modern doctrine" of the 1920's might have been, the last two decades have witnessed a dramatic increase in the number of procedural safeguards afforded defendants in criminal cases.

A criminal prosecution starts with an arrest, and ends with a jury verdict which is arrived at after serious deliberation.

In my view, the deliberations of a jury are the most critical stage of a trial, and at that stage a defendant's rights should be protected zealously. R. C. 2945.33 leaves no doubt that a jury, during deliberations, is not to separate for lunch. Therefore, I dissent.