DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
In 1993 Ricky Martin Veal pled guilty to, and was convicted of, corruption of a minor, in violation of R.C. 2907.04, and gross sexual imposition, in violation of R.C. 2907.05(A)(3). In a 1998 hearing, the court found that Veal was a sexual predator and imposed lifetime registration and notification provisions on him, in accordance with R.C. 2950.03-07. He has appealed from the determination that he is a sexual predator.
He has asserted that the trial court erred in its determination that he is a sexual predator because (1) Chapter 2950 of the Ohio Revised Code unreasonably interferes with private rights beyond the necessities of the situation or is unduly oppressive upon individuals and as a result is unconstitutional; (2) it failed to give Veal a meaningful hearing as required by R.C. 2950.09(B)(1); and (3) there was insufficient evidence to support the determination that he was a sexual predator.
 I
Veal was convicted of rape in 1981. On March 30, 1992, he was released on parole and moved in with his mother. On August 5, 1992, Veal's mother contacted the Copley Township Police to report Veal was abusing her thirteen year old grandson. In response, an "Arrest Supplement Report/Alleged Parole Violation Report" ("Report") was prepared. That Report was used as the basis of the revocation of his parole, and was entered into evidence in the 1998 sexual predator hearing.
When detectives investigated the allegations that he had sexually abused his thirteen year old nephew, it was reported to them that Veal had also abused an eleven year old friend of that nephew. The nephew told the detectives that Veal forced the nephew to engage in oral and anal sex with him "every other day," starting "right after Ricky Veal * * * was paroled[.]" He reported being shown the dirty movie "Hot Chocolate," which was later confiscated from the house. The nephew reported that Veal told him that "if you tell any one about this, I'll kill you." The statement of the parole officer indicated that the forced sexual activity occurred "twice a week until Veal's arrest." Medical reports confirmed that the nephew had been sexually abused.
The eleven year old friend of Veal's nephew reported that Veal grabbed his private parts and unsuccessfully tried to force anal sex on him. He also reported being threatened that, if he told, Veal "would kill" him, the nephew, and the nephew's grandparents.
Veal denied anal or oral intercourse with either of the two boys, alleging that he had caught the two boys involved in sexual play with each other. Veal alleged that the nephew threatened him. Veal claimed that the nephew warned him that, if Veal told anyone, the nephew could have him sent back to jail. Despite denying any sexual activity with these boys, Veal later pled guilty to corruption of a minor and gross sexual imposition.
According to the Report, Veal's first sexual offense occurred when he was thirteen years old. The Report notes that he admitted attempting to rape three females, ages fourteen to sixteen at that time. Between then and his eighteenth birthday, Veal reportedly committed four additional sexual assaults. He was discharged from juvenile detention two months after his eighteenth birthday. Eight days later he committed grand theft. His sentence for that conviction was ninety days. Eighty-five days of the sentence were suspended. Thirteen months later he carried a concealed weapon. The suspended sentence was reimposed, and he was ordered to serve a six month sentence on the new conviction. A year later, he committed criminal trespass. Approximately five months after his conviction for criminal trespass he was arrested and charged with a felony. He was found not guilty three months later. One month after that acquittal, Veal committed the rape that led to his lengthy incarceration, and subsequent parole. Veal was twenty-one at the time. Just short of his thirty-second birthday, Veal committed the offenses that led to his most recent conviction while on parole for his 1981 rape conviction.
A condition of Veal's 1992 parole was that he "successfully complete the sex offenders program." The Report notes that, according to the program counselor, Veal "denied most of the sexual offenses on the record." His counselor reported that he kept the counseling sessions and was "passively [sic] and cooperative." Veal's parole officer described him as compliant with the conditions of parole, and eager to obtain the officer's approval. When his parole officer questioned Veal, he denied sexual activity with women or masturbation. Although Veal's parole officer was enthusiastic about Veal's general compliance with parole, that same officer observed that,
 Veal appears to be unable to exist with [sic] forcing other individuals into meeting his sexual needs. The subject does not acknowledge any wrong to his actions. Successful treatment seems impossible. Therefore, it is requested that the subject be given the longest period of incarceration possible, not to treat the subject, but to protect his future victims. It appears unrealistic to believe any form of supervision would adequately protect "society" from this person.
Veal did not object to the state using the Report at the sexual predator hearing. The state presented no witnesses against Veal. Veal made no attempt to present witnesses on his own behalf. The court asked, "Mr. Veal, is there any statement that you would like to make to the Court prior to the Court's making this determination?" Veal's response was, "No." His attorney asserted that he was not a sexual predator because there are at least three or four of the factors that don't apply to Veal. On his behalf, his attorney asserted that he (1) was only thirty years old[1] when he committed the offenses; (2) attempted to enroll in a program to treat sexual offenders during his incarceration for rape; (3) enrolled in such a program once released on parole; (4) does not have a mental illness or disability; (5) was only convicted of one prior sexual offense as an adult; and (6) did not use any chemical substances to impair any of his three victims.
 II
Constitutionality of Exercise of Police Power
 Veal has urged this court to follow the guidance of the Eleventh Appellate District, as articulated in State v. Williams (Jan. 29, 1999), Lake App. No. 97-L-191, unreported, discretionary review granted (1999), 86 Ohio St.3d 1406. The Williams court found that, although the purposes of Chapter 2950 of the Ohio Revised Code may bear some rational relationship to the public health, safety, morals, or to the general welfare, it is "unconstitutional on its face because it unreasonably interferes with the rights of individuals beyond the necessities of the situation, and because in our opinion the statutory scheme is unduly oppressive." This court, in State v. Criss
(Jan. 12, 2000), Summit App. No. 19298, unreported, rejected the holding in Williams.
 Instead, this court adopted the reasoning used by the Twelfth Appellate District in State v. Dickens (Aug. 2, 1999), Clermont App. No. CA98-09-075, unreported. Criss, Summit App. No. 19298 at 12. The Dickens
court concluded that the statute did not violate Section 1 Article I of the Ohio Constitution. At least five other Appellate Districts have likewise rejected Williams. See State v. Bolster (Sept. 20, 1999), Stark App. No. 1998CA00136, unreported; State v. Lower (Sept. 9, 1999), Franklin App. No. 98AP-1275, unreported; State v. Marker (Sept. 1, 1999), Seneca App. No. 13-99-05, unreported; State v. Woodburn
(March 23, 1999), Columbiana App No. 98 CO 6, unreported; State v. White (Nov. 5, 1999), Miami App. No. 98-CA-37, unreported.
Veal's arguments have not convinced this court that its decision in Criss was incorrect. Veal's first assignment of error is overruled.
 Meaningful Hearing Veal has asserted he was "given no opportunity to have a meaningful hearing or cross-examine any witness as the record was restricted to argument and documentary evidence."
 Although the state presented no witnesses against Veal, the record was not restricted to argument and documentary testimony. Veal was given an opportunity to testify, but chose not to do so. Veal did not object to the introduction of the Report against him, nor did he object to the lack of additional witnesses against him. He has not asserted, or demonstrated, any prejudice that might have resulted from the procedure followed by the trial court.
Generally, to be entitled to have an error reviewed on appeal the party must object at a time when the trial court could have corrected any error it might have made. State v. Williams (1974),39 Ohio St.2d 20, paragraph one of the syllabus. In addition, the party must demonstrate prejudice that resulted from the asserted error. Id. Because Veal has done neither, his second assignment of error is overruled.
 Sufficiency of the Evidence Veal has asserted that the evidence before the trial court was insufficient for it to find that he is a sexual predator. In determining whether the evidence was sufficient to support his adjudication as a sexual predator, this court must review the evidence before the trial court. This court must determine whether the evidence before the trial court was clear and convincing enough that a reasonable fact finder could have determined that Veal was a sexual predator, as defined by R.C. 2950.01(E). See State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus; R.C. 2950.09(B)(3). See, also, State v. Cartwright (Nov. 25, 1998), Lorain App. No. 97CA006782, unreported, at 6.
In deciding whether the individual was one who "is likely to engage in the future in one or more sexually oriented offenses," R.C. 2950.01(E), the trial court is to consider the factors listed in R.C. 2950.09(B)(2). In this case, the following factors are relevant:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the of the sexually oriented offense for which sentence [was] imposed;
 (d) Whether the sexually oriented offense for which sentence [was] imposed involved multiple victims;
* * *
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whetehr the offender participated in available programs for sexual offenders;
* * *
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence [was] imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
Taking the facts asserted in the Report as true, Veal had only been convicted of one prior sex offense as an adult. He was almost thirty-two when he was arrested for the offenses that triggered this hearing. Veal was incarcerated eleven of his nearly fourteen years as an adult, assuming he completed the sentences as imposed.[2] During the brief period he was free to manage his own affairs as an adult, he was convicted of three sex offenses, and committed approximately thirty-eight other sexual offenses.[3]
The actions that led to the last two convictions, and formed the basis for the additional reported but not prosecuted adult offenses, all occurred when he was on parole from a rape conviction. Veal's record includes fifteen separate sets of charges against him that resulted in conviction, juvenile referral, confinement in a detention home, fine, or a prison sentence. Seven of those were sexual as charged, or described in the Report, and resulted in ten victims. Seven of the victims reported they were sexually assaulted when Veal was between thirteen and eighteen years old. He admitted committing three of the juvenile assaults.
Taking the facts asserted as true, Veal engaged in a demonstrated pattern of sexual abuse. That pattern was extensive and pervasive, given his relative youth, the relatively early age at which he began to commit sexual offenses, the relatively short period during which he was free to commit offenses, and the commission of the latter sexual offenses before the completion of his sentence for the former sexual offense. He accumulated a long criminal record, nearly half of which was sexual in nature. These facts supply clear and convincing evidence that factors R.C.2950.09(B)(2)(a), (b), (f), (h), and (j) are applicable to a finding that Veal was likely to reoffend in the future.
There were two victims in the offense that triggered the sexual predator adjudication. They were ages eleven and thirteen. One of the victims of his juvenile offenses was seven. One of the recent victims was Veal's nephew with whom he lived. This indicates that Veal may have taken advantage of a trust relationship between them. In addition, he threatened both of the recent victims with death and with the death of loved ones if they told anyone. Veal selected multiple young individuals with whom he had frequent contact, and over whom he had apparent control. He reinforced that apparent control by death threats. These facts, if believed, supply clear and convincing evidence that factors R.C. 2950.09(B)(2)(c), (d), (i), and (j) are applicable to a finding that Veal was likely to reoffend in the future.
In contrast, Veal received an enthusiastic report from his parole officer with respect to general compliance with parole. Veal did enroll in a sex offender treatment program while on parole, and was described as cooperative in that program. Even so Veal's parole officer, the individual most supportive of Veal's general rehabilitation, indicated that he believed that no "form of supervision would adequately protect `society' from" Veal's inability to exist without "forcing other individuals into meeting his sexual needs."
The trial judge indicated that the age of the victims, the multiple offenses, the multiple victims, the prior rape conviction, and the threats made by Veal were clear and convincing evidence that Veal is a sexual predator. Those findings correspond to the factors identified in R.C. 2950.09(B)(2)(b), (c), (d), (h), and (i). On review of the evidence, we find there is not only sufficient clear and convincing evidence to support those findings but also to support the additional ones outlined above. Based on the application of these factors to Veal, there was sufficient evidence that, if believed, could convince a reasonable factfinder that Veal is a sexual predator. Veal's third assignment of error is overruled.
 III
Veal's first assignment of error is overruled because this court recently reviewed Chapter 2950 of the Ohio Revised Code with respect to the constitutionality of its exercise of police power and determined that it is not constitutionally infirm. Veal has not offered any arguments that mandate a different conclusion. Because Veal did not object to the manner in which the sexual predator hearing was conducted, he waived his right to have it reviewed on appeal. His second assignment of error is overruled. Veal's third assignment of error is overruled because the state presented ample clear and convincing evidence that, if believed, could convince a reasonable factfinder that he is a sexual predator. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD, FOR THE COURT
SLABY, J., BATCHELDER, J., CONCUR.
[1] Veal's attorney was apparently unaware that his client was nearly thirty-two when he committed the offenses.
[2] Based on the facts summarized in section I, supra, Veal was not released from the juvenile facility until two months after his eighteenth birthday. His next sentence was for 90 days, of which eighty-five days were suspended but later reinstated. The court imposed a six month sentence for the conviction that caused the reinstatement of the suspended sentence. He was subsequently charged with aggravated burglary, and acquitted three months later. The Report does not indicate whether he was incarcerated while awaiting trial. He was then convicted of rape and served ten years and one month before being paroled. If the six month and ninety day sentences were fully served, and he was incarcerated while waiting trial, his period of incarceration was eleven and one half years. If he served neither of the sentences, and was not incarcerated while waiting trial, he was imprisoned for ten and a half years.
[3] The estimate above is based on the assertion of two offenses a week during the 138 day period he was out on parole, less the two offenses for which he was convicted during this period. At one point, the Report indicates that Veal forced sexual activity on his nephew every other day, which would indicate the commission of approximately sixty-seven additional offenses during that period.