No. 37,608

THE STATE OF KANSAS, *Appellee,* v. ISAAC FRANKLIN, *Appellant.*

(208 P. 2d 195)

Opinion filed July 9, 1949.

*A. P. Woodard,* of Wichita, argued the cause and was on the brief for the appellant.

*Charles Rooney,* of Topeka, *Johnie Frank,* county attorney, and *Everett C. Fettis,* deputy county attorney, argued the cause, and *William C. Norton, E. Lael Alkire, A. Martin Millard, Fred M. Field, Robert L. Morrison* and *Keith M. Curfman,* deputy county attorneys, were with them on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: In this case the appellant was charged with murder in the second degree for the fatal stabbing of one Whatley and was found guilty of first-degree manslaughter. His motion for a new trial was overruled, following which this appeal was taken.

Appellant has abstracted only a brief portion of the testimony of two witnesses—the county coroner who testified for the state— and appellant himself. However, following the oral argument in this court, counsel for the state furnished us with an abstract of all evidence introduced by the state and from it we learn that the altercation in question took place at or near the Plainview Inn on the night of April 24, 1948. It appears that appellant, Whatley, and others, were engaged in some sort of argument or trouble over the attentions being paid to a young woman who was in the company of appellant. There was some evidence to the effect that she had been struck or pushed by someone other than appellant—possibly by Whatley. She let out a scream, following which appellant ran over and struck Whatley on the shoulder. The latter ran a short distance, fell, and soon afterwards died. Appellant came up with a knife in his hand, yelling, "Where is he? Where is he?"

The undersheriff testified to a conversation had with appellant the next day in which the latter said he had approached Whatley from behind. He also admitted ownership of state's Exhibit 1 which was a bloody knife. The county coroner, a regularly-licensed physician, testified concerning his examination of the body of the deceased, the bloody clothing, and the wound in the upper right anterior chest wall which, in his opinion, had been made with a sharp cutting instrument. A deputy sheriff who was present the following day when appellant was being questioned testified that appellant told him and other officers that one Thompson and Whatley were sparring at each other with knives and that he (appellant), being afraid Thompson was going to get the worst of it, ran in behind Whatley and struck at him with a knife. This officer further testified that when they searched the car of appellant they found a bloody knife, with the blade open, in the front seat, and that appellant admitted ownership of this knife.

Several other witnesses testified for the state but for our purposes their testimony is immaterial and will not be detailed.

As heretofore stated, only a portion of the testimony of appellant

is abstracted but his version of the altercation was substantially as follows:

He testified that he was first attracted to Whatley and the woman in question when Whatley cut her and shoved her down; that Whatley then started cutting at Thompson, the latter being an uncle of appellant's, and that he (appellant) then went to the rescue of Thompson and the woman; that he and Whatley had some words and the latter turned and said to him, "I will cut your so-and-so throat too"; that he thought Whatley was going to kill Thompson and that Whatley then struck out at him (the appellant) and it was at that time he struck Whatley; that when he struck Whatley he believed that his life was in imminent danger and that what he did was done in self-defense.

The jury returned a verdict finding appellant guilty of first degree manslaughter.

Appellant's motion for a new trial set out the usual statutory grounds but on appeal and in his brief in this court appellant relies on only two grounds of alleged error for reversal.

His first point is that the trial court erred in permitting the coroner when testifying for the prosecution to give his opinion as to the relative position of the parties to the homicide at the time the fatal wound was inflicted.

The coroner had testified at considerable length as to the wound on the shoulder of the deceased, its location, depth, the loss of blood, and as to the course of the cutting instrument by which the wound was caused, and in answer to the question he gave it as his opinion that the person who had the cutting instrument was back of Whatley, possibly just a little to the right. Appellant argues that no sufficient basis had been laid for such a question as this and that from its very nature the question and answer invaded the province of the jury. We will not labor the point but in our opinion no prejudicial error resulted from such testimony. In the first place, there was other testimony that appellant had struck Whatley from the rear. Furthermore, in the light of testimony already given by the coroner prior to this particular question and answer we think that it was proper and that appellant's objection thereto is without merit. Counsel for appellant had the opportunity to and did cross-examine this witness on all matters concerning which he had testified on direct examination.

The other ground for reversal relied on by appellant arose as

follows: While appellant was testifying in his own behalf under direct examination, Mrs. Whatley, the mother of the deceased victim, called out from the counsel table—

"Judge, can I say a word? He killed my son. He killed my son. He killed my son. He killed my son. He killed my son." (Screaming.)

Appellant argues that the court erred in permitting Mrs. Whatley thus to testify from the audience at a time after the state had rested its case and while appellant was testifying in his own behalf and that her statements, coming in such a manner and time, had the effect of denying appellant the right to cross-examine her on such statements.

From the record furnished us by appellant it is not exactly clear as to just what transpired immediately following this emotional outburst on the part of the mother of the deceased victim but from appellant's abstract it appears the jury was admonished and a short recess taken, following which appellant continued with his direct examination. The nature of the admonition to the jury—that is, whether it was the usual one given before a recess or separation—or a specific one to disregard what had just taken place—it is not shown.

That such outbursts and demonstrations often occur during the trial of homicide cases cannot be denied and they are familiar to the bench and bar of this and every other state. Here we have a case of a grief-stricken mother being emotionally overcome while the man charged with her son's death was in the witness chair. She had previously testified for the state and appellant's argument that such outcry amounted to "testimony" by a state's witness with no opportunity for cross-examination is hardly tenable. In the first place, appellant could have recalled her for further cross-examination, and secondly, under the circumstances such an outcry could hardly be called "testimony."

The real crux of this matter is whether such emotional outburst had the effect of denying appellant the fair trial to which he was entitled. There is no showing that counsel for the state were in any way to blame for the incident or that they had any previous knowledge of her intention to make such outcry. Appellant and his counsel were, of course, present in the courtroom. No special admonition to the jury was requested by appellant and neither did he move for a mistrial. The record shows that an admonition of some sort was immediately given to the jury and a recess taken. Further-

more, it must be borne in mind that appellant's own testimony admitted the blow to the deceased and his only claim was that of self-defense or defense of another close to him—which the jury chose not to believe. Moreover, the specific incident was singled out and referred to in instruction No. 12, in which the jury was instructed and admonished not to consider any outburst of emotion on the part of any witness or other interested party.

In passing, we cannot refrain from saying that in the interest of orderly courtroom procedure and decorum and in the safeguarding of the rights of a defendant a trial judge, under such circumstances, would be entirely justified in having the offending party removed from the courtroom and he should then and there admonish the jury to disregard such demonstration. We realize, of course, that there are instances in which, depending upon the particular facts and circumstances, outbursts of emotion, weeping, fainting, applause, or other demonstrations could be considered so highly prejudicial to the rights of a defendant as to require the granting of a new trial but we do not think that the case before us falls within that class. A detailed discussion of the cases and authorities dealing with the question would serve no useful purpose but in general it may be said that it is within the sound discretion of the trial judge to determine the effect of such outbursts or demonstrations and in the absence of a clear showing that the jury was improperly affected thereby to the prejudice of the defendant, the ruling of the lower court in denying a new trial will not be disturbed.

Our statute (G. S. 1935, 62-1718) provides—

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

In conclusion—during the oral argument before this court counsel for appellant called our attention to the trial court's alleged hostile attitude and our attention was directed to a threat by the court at one stage of the trial to jail counsel for contempt if he did not sit down and quit arguing. Such belated ground for reversal not being included in the motion for a new trial, is not properly before us here. (*State v. Smiley,* 167 Kan. 261, 206 P. 2d 115.) Notwithstanding the rule, we have examined the matter. The "threat" occurred while the coroner was testifying and followed numerous objections and "voluntary observations" by counsel for appellant, many of which were dilatory, frivolous and without merit. While the threat

by the court was rather sharp, yet, from the record it seems almost to have been invited and made necessary by the constant objections and arguments in support thereof. Even though the matter were properly before us, we would be compelled to hold that the rights of appellant were not prejudiced thereby.

No error requiring a reversal being shown, the judgment of the lower court is affirmed.