No. 48,448

JOHN ISEMAN and ELLEN ISEMAN, His Wife, *Appellees,* [*Cross-Appellants*], v. KANSAS GAS AND ELECTRIC COMPANY, a Corporation, *Appellant.*

(567 P.2d 856)

Opinion filed July 11, 1977.

*Douglas S. Stratton,* of Wichita, argued the cause, and *Ralph Foster* and *William A. Buckles,* of Wichita, were on the brief for the appellant.

*Clyde M. Burns,* of Lyndon, argued the cause, and *Marian M. Burns,* of Lyndon, was with him on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

KAUL, J.: The defendant-appellant (hereafter referred to as KG&E) appeals from a judgment entered on a jury's verdict in the amount of $9,000.00 for damages to land and crops owned or leased by plaintiffs-appellees (Isemans). The damages stem from a core drilling operation by KG&E in connection with the

planned construction of a major power plant in the area. On motion for a new trial the trial court ordered that a new trial be granted unless Isemans accepted a remittitur in the amount of $3,500.00. Isemans accepted the remittitur, but, nevertheless, have cross-appealed from the trial court's order in this regard.

The land involved consisted of 400 acres owned by Isemans and 160 acres leased by them which was separated from their own land by a road.

On February 5, 1974, the Isemans and KG&E executed a written agreement which granted KG&E the right to enter upon the land and drill a series of exploratory bore holes, including the installation of casement pipe in the holes. It was agreed that when the holes were no longer needed for testing purposes all pipe and other installations above the ground would be removed by KG&E and the holes plugged in accordance with state laws and regulations. The portions of the agreement directly involved in this litigation read as follows:

"IT IS HEREBY AGREED that the KG&E shall pay to the grantors the sum of $750.00, or $25.00 per hole, whichever sum is greater, for the privilege of drilling said holes, and the same to be paid forthwith, or within fifteen days from the date of drilling holes.

"IT IS FURTHER UNDERSTOOD that KG&E shall pay the fair value of any damages caused to the land and crops caused by the installation, reading, testing, removal of equipment or plugging of said holes, said damage to be in addition to the sums paid for the privilege of drilling."

On or about March 15, 1974, employees of KG&E entered upon the land with core drilling equipment, which included a drilling rig or derrick mounted on a two-ton truck, another rig mounted on a D-3 caterpillar, two water tank trucks, a D-7 caterpillar dozer, and several smaller trucks. At the time of the drilling operation the ground was very wet and muddy. As a result, KG&E's heavy equipment made deep ruts and depressions and tore up the soil when traveling to and from the core drilling sites. Isemans filed a petition in three counts, in the first of which they alleged damages in the amount of $25,000.00 to their own land; the second count alleged $7,000.00 damages to their interest in the leased land; and for their third count they claimed $35,000.00 in punitive damages.

The evidence discloses that there were twelve to fifteen such sites on the Iseman land and fourteen to seventeen sites on the leased land. Isemans took numerous photographs of the ruts and

conditions of the ground during the drilling operations. The original colored photographs, which were received in evidence at trial, have been submitted with the record on appeal. There was evidence that the Isemans had to do extensive work to restore their cultivated farm land to permit the planting of row crops for the ensuing year. There was evidence of damages to the wheat crop and also to the pasture land. The evidence of damages consisted of the testimony of Iseman and several neighboring farmers. There was further evidence that KG&E requested permission to later enter upon the land with a bulldozer and attempt to smooth out or level off the damaged areas. Isemans refused this request and did not allow KG&E access to the land.

The following year, on April 14, 1975, the land was condemned for a permanent easement by KG&E. We were informed on oral argument that Isemans are still farming their own and the leased land and that actual possession will probably not be taken by KG&E prior to 1980.

KG&E specifies four points of error on appeal. Its first point includes five subpoints which go to various rulings of the trial court during the course of the proceedings. Subpoints 1(b), 1(c) and 1(e) have been abandoned. Points two, three and four all go to the sufficiency of the evidence and arguments in support thereof have been merged by KG&E in its brief.

In subpoint 1(a) KG&E contends the trial court erred in not allowing it to present evidence which would have shown that it offered to return to the Isemans' property and restore and repair it which, it is claimed, would have greatly reduced the damages. Our search of the record fails to reveal any reproduction of the proceedings in this connection or any proffer of evidence by KG&E as to precisely what it would have done to restore the premises and to what extent such restoration would have lessened the damages. It is, of course, incumbent upon an appellant to include in the record on appeal any matter upon which it intends to base a claim for relief on appeal. (*State v. Farris,* 218 Kan. 136, 542 P.2d 725, and cases cited therein.) However, it was conceded by counsel at oral argument that the matter was considered by the trial court at trial and that the court first ruled such evidence would be admitted as relevant to count III of plaintiffs' amended petition, which contained plaintiffs' claim for punitive damages. According to counsel, after plaintiffs dismissed their claim for

punitive damages, the trial court ruled that evidence of KG&E's offer would be excluded. Plaintiffs' counsel argued that if plaintiffs had permitted KG&E to reenter the property with their heavy bulldozers and tractors, the result would have been to cause even more damage due to the wet condition of the soil at the time and that, therefore, plaintiffs' refusal was reasonable.

The general rule is that only reasonable attempts to mitigate damage need be made by an injured party in order to escape a reduction from full recovery. (*Cain v. Grosshans & Petersen, Inc.,* 196 Kan. 497, 413 P.2d 98; *In re Estate of Stannard,* 179 Kan. 394, 295 P.2d 610; and *Fritz v. Western Light & Power Corp.,* 140 Kan. 250, 36 P.2d 90.) Plaintiffs' cause of action herein stemmed from the contract in which KG&E agreed to pay "the fair value of any damages caused to the land and crops"; it was not necessary for plaintiffs to make a further agreement permitting KG&E to reenter. In this connection in *Theis v. duPont, Glore Forgan Inc.,* 212 Kan. 301, 510 P.2d 1212, we held:

"In mitigating damages it is not necessary for the plaintiff to make another contract with the defendant who has repudiated, even though he offers terms that would result in avoiding loss." (Syl. 9.)

On the record presented, at best, it would appear highly uncertain whether a reentry by KG&E with its heavy equipment would have actually lessened the damages. This statement of pertinent rules appears in 25 C.J.S., Damages, § 96:

"Uncertain and contingent possibilities cannot be taken into consideration in mitigation of damages. An offer to plaintiff of something other than that which he is entitled to as compensation is not admissible in mitigation; nor can defendant who is bound to make compensation in money compel plaintiff to accept it in another medium. . . ." (pp. 1001-1002.)

KG&E cites *In re Estate of Stannard,* supra, for the proposition that if offered an unqualified opportunity to mitigate damages, the aggrieved party must accept the opportunity. In the case at bar the contract only provided for damages if the crops and land were damaged by the drilling. There was no provision allowing KG&E to come back upon the land to do any further work. Under the circumstances, KG&E's offer cannot be said to amount to any unqualified opportunity to mitigate damages.

KG&E also cites *Creten v. Chicago, Rock Island & Pac. Rld. Co.,* 184 Kan. 387, 337 P.2d 1033, wherein plaintiff Creten's irrigation pump was destroyed in a crossing accident. Creten

made no effort to secure alternative irrigation and his crops died as a result. Creten sued for damages for the loss of his crops in addition to the loss of his pump. It was held that since Creten had made no effort whatsoever to save his crops he was not entitled to damages therefor. This court applied the rule that one whose property is injured by another is bound to exercise reasonable care and diligence to avoid loss and minimize resulting damages. In the case at bar, Mr. Iseman did not sit back, do nothing, and then sue for total loss of crops. There was evidence that he made special efforts to minimize his crop loss. He chiseled the cultivated land four times and disked it twice in order to rehabilitate it as much as possible before planting his crops. There was also testimony that leveling and reseeding the damaged pasture would have been impractical since there was no way to fence off the damaged areas from the rest of the pasture because to do so would have cut off access to the stock watering ponds, the only water available in the pasture. The only thing plaintiffs were asked to do by KG&E was to enter into an additional agreement permitting reentry upon the land; under the circumstances shown such was not required to meet the test of reasonableness. We find no abuse of discretion in the trial court's action in this regard.

KG&E states its second contention (1[d]) under point one in these words:

"The trial Court erred in its pre-trial, trial and post-trial rulings, decisions and orders in refusing to allow defendant to present evidence showing that plaintiffs did not own the damaged property at the time of the trial, and therefore, that no permanent damages had accrued to plaintiffs."

We find no evidentiary ruling in the record upon which the point as stated could be based. From the argument on the point in the brief of KG&E, it appears the complaint is directed at the instructions on damages submitted by the court. The argument is that since Isemans were paid in May of 1975 for their 400 acres of land in a condemnation proceeding, which was prior to trial in September of 1975, their possessory interest in the land had terminated. KG&E says that the Isemans were in a situation analogous to that of a tenant and as such they were no longer the proper parties to be compensated for restoring land which was not theirs. KG&E cites *Binder v. Perkins,* 213 Kan. 365, 516 P.2d 1012, wherein we held that evidence of damages to a tenant's alfalfa field was only admissible as to damages suffered during the term of the tenant's lease.

The contention of KG&E is without merit for several reasons. First, the record discloses no objection to the instruction given on damages; thus, under K.S.A. 60-251(*b*), it became the law of the case unless clearly erroneous. (*Apperson v. Security State Bank,* 215 Kan. 724, 528 P.2d 1211.) The trial court gave the following instruction on damages:

"The damages claimed to growing annual crops should be determined by the amount shown by the evidence to have been lost due to the damage or destruction of said crops.

"As to the damage claimed to the land including damage to vegetation other than annual crops, you are instructed that such damage is of a temporary nature and is of such a character that the property can be restored to its original condition. The measure of damages is the reasonable cost of repair necessary to restore it plus a reasonable amount to compensate for loss of use of the property while repairs are being made with reasonable diligence, not to exceed the fair and reasonable market value of the real estate before the damage occurred.

"As to Count II, plaintiffs do not claim and are not entitled to the cost of restoring the 160 rented acres inasmuch as the tract is not owned by plaintiffs.

"In fixing the amount of damage to plaintiff, you should not include any loss which plaintiff could have prevented by reasonable care and diligence."

A second fault in the position taken by KG&E, in this regard, is the fact that Isemans retained fee title to the land and, thus, had a possessory interest therein insofar as it did not conflict with the use of the easement obtained by KG&E in the condemnation proceedings. Isemans, likewise, retained a possessory interest in the leased land. Third, the condemnation of the land was clearly within the contemplation of the parties at the time the agreement was executed; nevertheless, KG&E agreed to pay the fair value of any damages caused to the land and crops as a result of its core drilling. The land in question will ultimately be used by KG&E as a site for a cooling lake for its proposed nuclear generating facility, but from the record, it appears the project will not be completed for several years. It is clear the agreement contemplated payment by KG&E to compensate Isemans for losses to their crops and the use of their land during the interim period.

The existence of a contract for the payment of damages distinguishes the case at bar from those cases in which a condemnation award is held to preclude an action for damages stemming from prior trespasses upon the same land. (See 33 A.L.R. 3d, Anno., AWARD OF, OR PENDING PROCEEDINGS FOR, COMPENSATION FOR PROPERTY CONDEMNED, AS PRE-

CLUDING ACTION FOR DAMAGES ARISING FROM PRIOR TRESPASSES UPON IT, p. 1132.)

We hold the subsequent condemnation of the land gave KG&E no immunity from liability for the damages which it had contracted to pay since the use damaged was wholly separate from the easement taken in the condemnation action.

As previously indicated, KG&E has combined its arguments with respect to points 2, 3 and 4 and states its contention in these words:

"The Court abused its discretion in refusing to grant a new trial in that there was no substantial evidence to support an award for loss of crops and all evidence of damages was based on speculative and conjectural testimony, and that there was no substantial evidence to support the jury's award."

The argument is premised primarily on the fact that no precise measurements were made as to the exact acreages damaged and that loss in yield from crops rested only on testimony given in the form of estimates. Isemans respond by first pointing out that no objections were lodged at trial to testimony of any of their witnesses concerning loss of crops or other evidence of damages and, therefore, the alleged error is not before us for review under the provisions of K.S.A. 60-404. By way of further response, Isemans point out that John Iseman and all of his witnesses were farmers with years of experience in tilling the land, planting and growing of pasture grasses and they disclosed sufficient knowledge to testify as experts which entitled their opinions to go to the jury; the degree of knowledge of the witnesses going to the weight of the evidence rather than to its admissibility. (*Casey v. Phillips Pipeline Co.,* 199 Kan. 538, 431 P.2d 518.) The record is not clear as to whether the testimony of the Isemans' witnesses was admitted as expert testimony, but as we have previously indicated, no objection was lodged on this or any other ground.

KG&E cites *McCracken v. Stewart,* 170 Kan. 129, 223 P.2d 963, wherein it was said:

". . . This court has consistently held that damages cannot be established by statements of a witness based on mere opinion without regard to specific facts or knowledge upon which their opinions were based. Damages cannot be based on mere conjecture and speculation. . . ." (p. 136.)

While the damaged areas of the crop land were not actually measured, Mr. Iseman and other witnesses testified as to their ability to determine acreage by looking at a field. They specifi-

cally described how the deep ruts fanning out from the entrance gates and drilling sites because the ruts were too deep to be used again by the heavy equipment, thus, causing damage to a wide area. This is clearly reflected by the photographs which were employed to corroborate the testimony of the witnesses.

There was specific dollar amount testimony as to the cost of the additional disking, chiseling and harrowing necessitated by the damages. Mr. Iseman testified as to the price of wheat per bushel and that his loss was thirty-five bushels per acre for the 8.5 acres lost. He also fixed his loss of soybeans in bushels. There was testimony fixing the pasture damage on a pasture rental basis. This testimony was not objected to nor disputed.

In ruling on KG&E's motion for a new trial, the trial court carefully reviewed the evidence on damages. The court found the verdict of $600.00 as to leased land in count II to be supported by the evidence. The court also found the evidence sufficient as to damages to the pasture land, but as to the crop land on the Iseman tract the court found the verdict to be excessive in the amount of $3,500.00. In arriving at the amount of remittitur the court considered the evidence of the acreage damaged and the proof of crop loss. The trial court heard and saw the witnesses and was in a far better position to evaluate the evidence than this court.

In considering the requirement of reasonable certainty with respect to proof of damages, this court has recognized that the evidence necessary is dependent upon the facts and circumstances of the particular case. (*Vickers v. Wichita State University,* 213 Kan. 614, 518 P.2d 512.) Absolute certainty is not required in establishing damages suffered in a farming operation. (*Rockey v. Bacon,* 205 Kan. 578, 470 P.2d 804; *Skinner v. Gibson,* 86 Kan. 431, 121 Pac. 513; *Brown v. Hadley,* 43 Kan. 267, 23 Pac. 492; and *Hoge v. Norton,* 22 Kan. [2d ed.]*374.)

In *Vickers,* which involved the loss of future profits resulting from a breach of contract, we held:

"The fact damages cannot be calculated with absolute exactness will not render them so uncertain as to preclude an assessment." (Syl. 2.)

In the case at bar, KG&E specifically contracted to pay "the fair value of any damages caused to the land and crops" as a result of its operation. The damages suffered were clearly within the contemplation of the parties and we find the evidence thereof not so remote or speculative as to preclude assessment.

Isemans have perfected a cross-appeal from the trial court's order granting a remittitur or in the alternative a new trial. They contend the trial court was without jurisdiction to grant a new trial on the ground of an excessive verdict, citing *Mettee v. Urban Renewal Agency,* 219 Kan. 165, 547 P.2d 356. The trouble with their position is that they accepted the remittitur, thus, acquiescing in the judgment. We have long followed the rule that anything which savors of acquiescence in a judgment cuts off the right of appellate review. (*Haberer v. Newman,* 219 Kan. 562, 549 P.2d 975; *Seaman Dist. Teachers' Ass'n v. Board of Education,* 217 Kan. 233, 535 P.2d 889; *Barnes v. Carroll,* 207 Kan. 545, 485 P.2d 1293.) In *Hawkins v. Wilson,* 174 Kan. 602, 257 P.2d 1110, it was specifically held that a party loses his right to appeal where he consents to a trial court's action in reducing a verdict.

The judgment is affirmed.

SCHROEDER, J., not participating.