(603 P.2d 221)
No. 50,453

STATE OF KANSAS, *Appellee,* v. ROBERT B. STOOPS, *Appellant.*

Opinion filed November 30, 1979.

*Charles A. O'Hara,* of Warner, Bailey, O'Hara, Busch & O'Hara, of Wichita, for appellant.

*James Turner,* assistant district attorney, *Vern Miller,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before ABBOTT, P.J., SPENCER and PARKS, JJ.

ABBOTT, J.: This is a direct appeal by the defendant, Robert B. Stoops, from six convictions of theft in violation of K.S.A. 1978 Supp. 21-3701 and from one conviction of making a false writing in violation of K.S.A. 21-3711.

The defendant was originally charged with a total of eleven crimes in three separate informations. The cases were consolidated for trial. All of the charges involved the alleged theft of motorcycles, motorcycle trailers, motorcycle titles, accessories and repair equipment.

The issues raised by defendant on appeal are (1) whether Sedgwick County had venue to try this action; (2) whether the trial judge was guilty of judicial misconduct toward the defendant, and, if so, whether defendant was denied a fair trial; (3) whether it was improper at trial for the State to use defendant's statement that had been given to Wichita police detectives; (4) whether the trial court erred when it permitted Detective Pate to testify as an expert witness about altered identification numbers on stolen motorcycles; and (5) whether it was multiplicitous to convict defendant on two counts of theft arising out of one burglary.

## I. VENUE

Our examination of the record discloses ample evidence that the items found in defendant's possession had been taken from their rightful owners in Sedgwick County, Kansas. K.S.A. 22-2602 provides: "Except as otherwise provided by law, the prosecution shall be in the county where the crime was committed." K.S.A. 22-2609 provides: "When property taken in one county by theft or robbery has been brought into another county, the venue is in either county." Defendant was charged with and convicted of the original theft from Sedgwick County. Sedgwick County had venue and defendant's argument is without merit.

## II. ALLEGED JUDICIAL MISCONDUCT

Basically, defendant's arguments of alleged misconduct may be grouped into three categories: (1) admonitions by the judge to defendant's counsel; (2) failure to admonish the jury to disregard a conversation occurring at the bench that defendant claims was overheard by the jury; and (3) comment by the judge at sentencing that it was his opinion defendant had committed perjury at trial.

The defendant sets forth numerous incidents from the 900-page

record to support the first category. It would serve no useful purpose to set them out verbatim.

Standards of conduct for trial judges are set by the American Bar Association Standards for Criminal Justice. Although Kansas has no comparable code provisions, the ABA standard hereinafter set forth is in substantial conformity with Kansas practice and is a recognized and acceptable guide to proper conduct. ABA Standards for Criminal Justice, The Function of the Trial Judge § 6.4 (Approved Draft 1971), provides:

"The trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions. He should not permit any person in the courtroom to embroil him in conflict, and he should otherwise avoid conduct on his part which tends to demean the proceedings or to undermine his authority in the courtroom. When it becomes necessary during the trial for him to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, he should do so in a firm, dignified and restrained manner, avoiding repartee, limiting his comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues."

Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding such alleged misconduct; and in order to warrant or require the granting of a new trial it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party. *State v. Thomson,* 188 Kan. 171, 174, 360 P.2d 871 (1961). In a more recent case, *Plains Transport of Kansas, Inc. v. Baldwin,* 217 Kan. 2, 10, 535 P.2d 865 (1975), the Kansas Supreme Court stated:

"We enter our caveat that no comment or remark should be made by a judge, during the trial of an action, which may tend to excite prejudice or hostility in the minds of the jurors toward one of the party-litigants, or sympathy for the other, but a mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment, and, where a construction can properly and reasonably be given to a remark which will render it unobjectionable, it will not be regarded as prejudicial. (88 C.J.S., Trial, § 49, p. 124.) Moreover, the court advised the jury to disregard any comments it may have made, and instructions Nos. 3 and 7 warned the jury against considering such remarks in reaching its decision so as to preclude any possible prejudice."

Similar instructions warning against misplaced reliance on the judge's remarks were given here, and defendant otherwise fails to show prejudice. When read within the context of the record, the

admonishments from the court in this case clearly amount to no more than the trial judge's attempts to keep under control the conduct of defense counsel. In all of the instances, the judge's comments were prompted by the aggressive trial tactics of defense counsel and were not initiated by the judge. The trial judge does have a positive duty to supervise the conduct of a trial so that the examination of witnesses is kept within reasonable bounds of relevancy. *State v. Carr,* 206 Kan. 341, 342, 479 P.2d 816 (1971). In *State v. Franklin,* 167 Kan. 706, 710-11, 208 P.2d 195 (1949), defense counsel raised as an issue on appeal the hostility which the trial judge displayed toward him at trial, including a threat to jail counsel for contempt should he have chosen not to sit down and quit arguing. The Kansas Supreme Court held that although the trial judge had been rather sharp toward defense counsel there was no prejudicial error, for from the record it seemed the hostility had been invited and made necessary by the constant objections and arguments of counsel. Such is the case here. In several incidents the trial judge's words might have been more carefully chosen, but we are unable to say his efforts to keep trial counsel under some control amounted to judicial misconduct.

In the second category, defendant alleges that during a discussion between court and counsel the jury heard the court caution the parties that he did not want mentioned in front of the jury the fact that a sawed-off shotgun had been seized during the search of defendant's residence. Defense counsel requested that the trial judge admonish the jury to disregard the remark. The trial judge refused. Defendant alleges in his brief he heard the judge's remarks when sitting near the jury and some ten feet from the trial judge and therefore is of the opinion the jury must have heard the comment. The defendant has the burden of proving error. He produced no evidence that any of the jurors did, in fact, hear the mention of sawed-off shotguns, and apparently even the court reporter failed to hear it since it does not appear in the record. In addition, the trial judge has great discretion in the conduct of the trial and defendant has failed to show an abuse of that discretion.

The third category involves statements made by the trial judge to the defendant *at sentencing.*

"THE COURT: Ordinarily first offenders receive probation. However, a learned judge in the courthouse not too long ago talked about defendants who commit perjury. Quite frankly, Mr. Stoops, in the presentence investigation you told Mr. Hensen that this was all a frame-up and that, then, on the witness stand

you gave a story to the Jury, which the Jury elected to believe, about some unknown person bringing this stuff out there. With your abilities, mechanical abilities as a welder, or whatever you were doing over at Mires Machine Shop, you can make a lot of money on the outside. I can't really believe that you would move to Butler County and leave your wife and children here, fool around over there working at least part-time for the owner of that farm at three dollars an hour when you have an ability to earn eight dollars an hour for KG&E, unless you were up to something. Quite frankly, I just thought that you committed perjury on the witness stand. I didn't believe you for a minute."

Since this colloquy took place at the sentencing and not in front of the jury, defendant's cited authorities pertaining to the trial judge's duty not to influence the jury are inapplicable. The defendant does not question whether or not a sentencing judge, in fixing the sentence within the statutory limits, may give consideration to the defendant's testimony as observed by the judge at trial. Although the question is not before us, we do note the Supreme Court of the United States recently ruled in *United States v. Grayson,* 438 U.S. 41, 57 L.Ed.2d 582, 98 S.Ct. 2610 (1978), that such practice is not error.

### III. USE OF DEFENDANT'S STATEMENT

As his third argument, defendant contends that his March 3, 1978, statement to police detectives Pate and Kitterman was taken in violation of his Fifth Amendment right to an attorney during custodial interrogation as provided in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966). In reviewing the record, there is a question of whether there was compliance with the *Miranda* requirement that custodial interrogation cease should the party express a desire to consult with an attorney. We need not decide that question, however, for, even assuming *arguendo* that defendant's constitutional rights as defined in *Miranda* were violated, the statement was still available to the State to be used in the manner in which it was used in this case. The statement was used for the sole purpose of impeaching defendant's testimony at trial concerning how he came across the stolen property, and then only after the trial judge had first held a *Jackson v. Denno* hearing out of the presence of the jury to determine that the statement was voluntary and not coerced. In *Harris v. New York,* 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643 (1971), the United States Supreme Court held that a defendant's statement or confession may be used for impeachment purposes when the defendant takes the stand even though the statement is

not admissible in the State's case in chief because *Miranda* warnings were not given. In *State v. Boone,* 220 Kan. 758, Syl. ¶ 14, 556 P.2d 864 (1976), the Kansas Supreme Court adopted the reasoning in *Harris* in a factual situation similar to the one now before the Court:

"A statement made by an accused after receiving his *Miranda* warnings and after asking to see his attorney, but before an attorney is present, may be used for impeachment purposes where the accused's testimony at trial is inconsistent with the statement and there is no evidence that the statement given was involuntary or coerced."

Defendant's argument that the statement was coerced and involuntary is not supported by the record. The trial judge correctly determined that the statement was voluntary and not coerced, thus it was available for impeachment purposes notwithstanding its inadmissibility for other purposes.

## IV. EXPERT TESTIMONY

Defendant next questions the propriety of allowing Detective Pate of the Wichita Police Department to testify as an expert concerning the alteration of serial numbers on motorcycles. The briefs argue that Detective Pate testified at the preliminary hearing that in some instances laymen might be able to distinguish altered serial numbers. This testimony does *not* appear in the record at trial, which was the only transcript furnished to this Court, although the prosecuting attorney alluded to the remark in argument to the judge. It is incumbent upon an appellant to include in the record on appeal any matter upon which it intends to base a claim for relief. *Iseman v. Kansas Gas & Electric Co.,* 222 Kan. 644, 646, 567 P.2d 856 (1977). In any event, the trial court has discretion to determine the qualifications of an expert witness and the admissibility of his testimony. To reverse the trial court on the admission of expert testimony, an abuse of discretion must be found. *State v. Loudermilk,* 221 Kan. 157, 163, 557 P.2d 1229 (1976). No such abuse of discretion is shown here. The trial judge held a hearing on this matter outside the presence of the jury, and after eliciting argument from both sides and reading the preliminary hearing transcript from which the alleged statements of Detective Pate were taken, he decided to allow the witness to testify. This Court will not disturb the lower court ruling absent a clear showing of abuse of discretion. Furthermore, even assuming *arguendo* that the trial court did abuse its discretion, defend-

ant has not demonstrated that his rights were substantially prejudiced by the error nor that had it not occurred, a different conclusion would have resulted at trial. *State v. Duncan,* 221 Kan. 714, Syl. ¶ 5, 562 P.2d 84 (1977).

## V. SINGLE LARCENY THEORY

Defendant's argument here deals with only two of the six theft convictions. The two theft charges in question sprang from the alleged burglary on October 1, 1977, of the Mires Machine Shop (defendant was acquitted of the burglary charge). Defendant was charged with one count of theft of a shop vacuum cleaner and other shop tools belonging to the shop owner, Ben Mires, and one count of theft of the tool box and tools belonging to a Mires employee who had left them in the building. Defendant charges in his brief that the State improperly split a single offense into separate parts. In *State v. Dorsey,* 224 Kan. 152, 154-55, 578 P.2d 261 (1978), the Court pointed out the difference between duplicitous and multiplicitous counts, stating that duplicity is the joining in a single count of two or more distinct and separate offenses while multiplicity is the charging of a single offense in several counts. The Court went on to state that "[t]he principal danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." The test for determining multiplicity as enunciated by the Court was "whether each [offense] requires proof of a fact which is not required by the others." Using this test, it is obvious no problem arises from charging both burglary and theft based on the same incident since the offenses are independent and distinct and involve entirely different elements of proof. *Dunaway v. United States,* 170 F.2d 11 (10th Cir. 1948); *State v. Blassingill,* 216 Kan. 722, 723, 533 P.2d 1228 (1975). A problem does arise from charging a defendant with two separate thefts when property that belongs to two different owners is stolen in the same incident. Our research indicates that the appellate courts of this State have not considered this identical question before. Out of the thirty-five states that have considered the question, thirty-four appear to have adopted the single larceny theory. In summarizing the annotation, the author of Annot., 37 A.L.R.3d 1407, states at 1409-10:

"The overwhelming majority of jurisdictions follow generally the so-called 'single larceny doctrine'; that is, that the taking of property belonging to different

owners at the same time and place constitutes but one larceny. Various rationales have been propounded in support of this position, perhaps the most common one being that such taking is one offense because the act of taking is one continuous act or transaction, and since the gist of the offense is the felonious taking of property, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons.

"Other rationales supporting the rule are concerned with the harshness of the punishment which might result from a contrary holding, or with the unconstitutionality of the double jeopardy to which a defendant would be subjected under a contrary decision.

"While several jurisdictions at one time followed the separate larcenies doctrine, under which there was a distinct larceny as to the property of each person, most have abandoned that position in favor of the single larceny doctrine, although cases from one jurisdiction have continued to follow the separate larcenies doctrine.

"Of the jurisdictions which at one time held that the stealing of property of different persons at the same time and place could be prosecuted at the pleasure of the government as one offense or as several distinct offenses, all but one have subsequently abandoned that position in favor of the single larceny doctrine.

"Even though the applicability of the single larceny doctrine is always limited to cases wherein the taking occurred at one time and from the same place, and is often limited to cases wherein the taking was a single act or transaction, there is some diversity in the construction of these requirements and in the manner in which they have been applied to various fact situations. Hence, no general statement can adequately describe the application of this doctrine, and a reading of individual cases is necessary."

Several recent cases which have adopted this reasoning include *Reader v. State,* 349 A.2d 745 (Del. 1975); *People v. Vaini,* 33 Ill. App. 3d 246, 337 N.E.2d 234 (1975). See also 18 Calif. L. Rev. 171, 178 (1930). The only modern cases found in which the position has been adopted that the stealing of property from different owners at the same time constitutes separate larcenies are *United States v. Marzano,* 537 F.2d 257, 272-73 (7th Cir. 1976), *cert. denied* 429 U.S. 1038 (1977), and *State v. Gilbert,* 281 Or. 101, 574 P.2d 313 (1978). In *Marzano,* defendant was charged with six counts of violating the federal statute for taking money belonging to federally insured banks, notwithstanding the fact that all of the money was taken from a single bank's vault, since the stolen money belonged to six different banks. The decision is not helpful here, however, since the court based its decision on the language of the special federal statute. In *Gilbert,* the Oregon Supreme Court held that when one defendant, at the same time and place, withholds the property of two or more victims there are as many offenses as there are victims. The Court, however,

reached its decision by relying upon the legislative intent of Or. Rev. Stat. 131.505 (1973) which states:

"(2) When the same conduct or criminal episode violates two or more statutory provisions, each such violation constitutes a separate and distinct offense.

"(3) When the same conduct or criminal episode, though violating only one statutory provision, results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims."

Although K.S.A. 22-3202 is similar to subparagraph (2) of the Oregon statute, Kansas has no provision comparable to subparagraph (3). Kansas has had occasion to discuss the "single larceny doctrine" although in a different context. In *State v. Roberts,* 210 Kan. 786, 790-92, 504 P.2d 242 (1972), *cert. denied* 414 U.S. 832 (1973), the Court considered whether the value of the property that was taken in successive occurrences could be totaled in order to constitute felony theft. It held that separate crimes result when property is stolen in a succession of takings from the same owner and from the same place if the thefts stem from separate impulses or intent; but if it appears that a single impulse or intent is involved in the succession of takings, then the thefts constitute a single felony. The Kansas Supreme Court has not been presented with the current issues, however, and we do not deem *Roberts* to be an adoption of the single larceny theory in toto.

The law in Kansas is well-established that (1) generally, a single wrongful act should not furnish the foundation of more than one criminal prosecution; and (2) the test to be applied in determining whether more than one offense can be charged as a result of a single act is whether each offense requires proof of a fact that is not required by another. See, *e.g., State v. James,* 216 Kan. 235, 238, 531 P.2d 70 (1975); *Jarrell v. State,* 212 Kan. 171, 510 P.2d 127 (1973); *State v. Pierce, et al.,* 205 Kan. 433, 469 P.2d 308 (1970).

Our Supreme Court has previously considered the taking of property from different owners at the same time during a *robbery.* It is significant to keep in mind that ownership of property taken *is not* an element of robbery. In *State v. Jackson,* 218 Kan. 491, 543 P.2d 901 (1975), the defendant entered a pharmacy with two other men and they ordered those present to lie on the floor. They robbed the pharmacist on duty of property belonging to the pharmacy and, in addition, they took money from a customer and money and a pocketknife from an employee. Jackson was con-

victed of three separate robberies. He appealed on the theory that the robbery was only one transaction. The Supreme Court rejected defendant's multiplicity contention, stating at 492:

"While the incident here was one overall transaction, three separate robberies were committed with property of three different persons being taken by threat of bodily harm against three separate individuals."

The Court explained there were three victims, not one, and thus three separate convictions were proper.

In *State v. McQueen & Hardyway*, 224 Kan. 420, 582 P.2d 251 (1978), the defendants were convicted of two counts of aggravated robbery arising out of a single incident in a grocery store. A revolver belonging to a store employee was taken from that employee during the robbery. That employee was ordered to leave the office, and then money belonging to the employer was taken. In reversing the conviction for taking the gun, the Supreme Court stressed the fact that only a single robbery took place because the gun was kept on the store premises in connection with operating the business and that the ownership of the property taken is not an element of robbery. The Court concluded at 431 that:

"Multiple offenses cannot be carved out of a single robbery because of separate ownership of the property taken.

"The state may not split a single offense into separate parts. When there is one wrongful act it does not furnish a basis for more than one criminal prosecution."

Although the Court did not discuss why in *State v. Jackson* the taking of a pocketknife and money from a store employee constitutes robbery and in *State v. McQueen & Hardway* the taking of a privately owned revolver from a store employee does not, it seems to us the distinction must be found in the intent of the perpetrator. In *Jackson* the defendant intended to rob the store employee of his personal money and possessions, whereas in *McQueen & Hardyway* the defendant had no way of knowing that the revolver personally belonged to the employee and thus he had no criminal intent separate and apart from his intent to rob the store. That, as we view it, is the theory behind the single larceny doctrine.

If we were to adopt the single larceny doctrine, it seems to us the test to be applied to determine if there are separate offenses or only a single offense should be based on whether the evidence discloses one general intent to steal or distinct and separate intents. Each case necessarily would have to be decided on its

own facts, and a defendant could be convicted of separate thefts only if the evidence showed the offenses to be separate and distinct and not committed pursuant to one intention, one impulse, or one plan.

As set forth earlier in this opinion, the Supreme Court has allowed a series of misdemeanor thefts to support a grand larceny conviction under the "single larceny doctrine" where the thefts were part of a single plan or scheme, or a single larcenous impulse. *State v. Roberts,* 210 Kan. at 790-91. It seems highly inconsistent to allow multiple misdemeanor thefts to be combined to reach a level of felony theft on one hand and on the other to convict a person of multiple thefts when that person intended only a single theft and had no reason to know the property belonged to more than one person.

It is not necessary for us now to reject or adopt the single larceny doctrine, for the defendant here was properly convicted under either a single or multiple theory.

In the case at bar, testimony was before the jury that the defendant had been employed at the shop and knew the general policy was that each employee owned his own tools. Most of the tools belonging to the shop owner had his name electronically engraved on them. Even if we were to adopt the single larceny doctrine it would be of no comfort to the defendant in this case since under that theory the jury could have inferred from the testimony in this case that the defendant had the necessary intent to steal from both the owner and an employee.

Affirmed.