JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Amber Burnett ("Defendant"), was charged in a five-count indictment with receiving stolen property,[1]
possession of criminal tools,[2] falsification,[3] vandalism,[4] and assault on a police officer with peace officer specification.[5] The defendant appeals the action of the trial court when it permitted a juror to be questioned in order to identify a spectator who had unlawfully engaged the juror in a conversation regarding the case. For the reasons that follow, we affirm.
{¶ 2} In a jury trial beginning November 27, 2000, the defendant and her co-defendant family members were tried for charges relating to an alleged elaborate scheme to defraud the Gap stores. In its case, the State called three Gap employees to testify. The Gap employees testified that the defendant and her co-defendants frequently came to the Gap stores and immediately began demanding returns or exchanges and instructing the clerks as to how to handle the various transactions. (TR. 215-216.) The amounts of the returns typically ranged between $100 and $800. (TR. 216, 309.) The defendant and co-defendants requested gift receipts with all purchases. A gift receipt is a duplicate of the original cash receipt but which does not contain the merchandise price. (TR. 225, 232-33.) The testimony revealed that the group returned more merchandise than they bought and received more money from the Gap than they had originally paid. (TR. 295.) The Gap employees testified that the group loudly demanded refunds and upset the clerks by causing a commotion during each visit. (TR. 258.)
{¶ 3} Many of the returns were honored, however, the Gap employees were hesitant to honor returns where receipts had obviously been altered. (TR. 259). The Gap employees suspected that the group used receipts that were altered in order to return the same merchandise more than once. The Gap manager testified that in her experience, the most logical explanation was that the second set of merchandise was stolen. (TR. 238.) The group returned some merchandise without receipts and purchased other merchandise with store credit certificates. (TR. 309.) A Gap sales clerk testified that whenever the defendant and her companions were questioned regarding a return, they became belligerent and rude and argued the legitimacy of the return. (TR. 310, 318-319.) Often the group had more knowledge of the Gap policies and procedures than the sales clerks assisting the group. The group knew how to coach a sales clerk through the various return transactions and knew where the Gap kept the large bills, checks and drop safes. (TR. 319.)
{¶ 4} The group used intimidation and confusion to overwhelm the sales clerks and managers into accepting cash returns for items without original receipts or even with clearly altered receipts. (TR. 792-793, 927.) Another Gap manager testified that the group always entered the stores in a very confrontational manner, disrupting business and frightening the sales clerks. (TR. 791.) She testified that if a return was resisted the group accused the clerks of being prejudiced. (TR. 798-799.)
{¶ 5} On March 10, 2000, during one such visit to the Gap in Westlake, Ohio, the group was arrested by the Westlake Police Department and charged accordingly with various offenses. Evidence recovered from two of their vehicles revealed Gap shopping bags with both new and used clothing, including more than 200 items valued over $9,215.10. (TR. 767.) The price tags were still attached to most of the new clothing discovered in the vehicles. Detective Tolaro testified that after examining all of the receipts for returned merchandise found in the possession of the group, the total for purchases was $14,825.43 while the returns totaled $19,019.33. (TR. 655.)
{¶ 6} During trial, juror no. 12 notified the court that she had been approached outside of the courtroom by a spectator attending the trial who commented to her about the case. Specifically, the spectator commented about the performance of defense counsel and the untruthfulness of the State's witnesses. (TR. 838-42). Juror no. 12 was examined by the court on the record and informed the court that she could still be fair and impartial in the case. (TR. 844-845.) After learning that juror no. 12 had informed the entire panel of the incident, the court conducted individual voir dire examinations of each member of the jury. Each juror responded that the incident did not affect their ability to be fair and impartial. (TR. 853-912).
{¶ 7} On Friday, December 1, 2000, after the jury was excused for deliberation, the court recalled juror no. 12. in order to identify the spectator suspected of jury tampering. Juror no. 12 suffered nearsightedness and was unable to positively identify the spectator either through photo identification or by viewing persons in the courtroom. (TR. 1063-1069.)
{¶ 8} On Monday, December 4, 2000, the jury found defendant guilty as charged of receiving stolen property, possession of criminal tools, falsification and assault of a police officer with peace officer specification. The jury also found her guilty of the amended and lesser included offense of attempted criminal damaging.[6] On January 4, 2001, the trial court sentenced the defendant accordingly. It is from this ruling that defendant now appeals.
{¶ 9} The Defendant's sole assignment of error is as follows:
 THE TRIAL JUDGE ERRED AND VIOLATED THE DEFENDANT-APPELLANT, AMBER BURNETT'S RIGHT TO DUE PROCESS OF LAW BY REMOVING A JUROR FROM THE DELIBERATION PROCESS AND PERMITTING A POLICE OFFICER TO QUESTION HER AND TO REQUEST AN IDENTIFICATION OF A COURTROOM SPECTATOR WHO WAS CLEARLY ASSOCIATED WITH THE DEFENDANTS, REGARDING A JURY TAMPERING ISSUE. THE TRIAL JUDGE THEN PERMITTED THE JUROR TO RESUME DELIBERATION.
The defendant contends that the procedures for control of the jury were not followed and that the court committed plain error when it permitted the police officer to question juror no. 12 after the deliberation process started. The defendant argues that, based on the prejudice to the defendant, the judgment of conviction must be vacated and a new trial should be conducted. In support of this argument the defendant relies on R.C. 2315.03, R.C. 2315.04, R.C. 2945.33 and Crim.R. 24(C).[7]
R.C. 2315.03 provides as follows:
 When the case is submitted, the jury may decide it in court or retire to deliberate. Upon retiring, they must be kept together, in charge of an officer, at a convenient place, until they agree upon a verdict or are discharged by the court. The court may permit them temporarily to separate at night and for their meals.
R.C. 2315.04 provides as follows:
 The officer in whose charge the jury is placed, as provided in section 2315.03 of the Revised Code, shall not communicate with them, nor allow anyone else to do so, unless by order of the court, except to ask if they have agreed upon their verdict. Such officer, before their verdict is rendered, shall not communicate to any person the state of their deliberations or the verdict agreed upon.
(Emphasis added.) R.C. 2945.33 provides as follows:
 When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court, except in cases where the offense charged may be punishable by death, may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court. Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation. Upon the trial of any prosecution for misdemeanor, the court may permit the jury to separate during their deliberation, or upon adjournment of the court overnight.
(Emphasis added.)
Crim.R. 24(G) provides as follows:
 (1) Before submission of case to jury. Before submission of a case to the jury, the court, upon its own motion or the motion of a party, may restrict the separation of jurors or may sequester the jury.
 (2) After submission of case to jury. (a) Misdemeanor cases. After submission of a misdemeanor case to the jury, the court, after giving cautionary instructions, may permit the separation of jurors.
 (B) Non-capital felony cases. After submission of a non-capital felony case to the jury, the court after giving cautionary instructions, may permit the separation of jurors.
{¶ 11} We find that R.C. 2315.03, R.C. 2315.04, R.C. 2945.33 and Crim.R. 24(G) do not preclude the trial court from permitting the further questioning of juror no. 12. The record reflects that juror no. 12 was questioned after the jury had finished deliberating for the day at 4:45 p.m. on a Friday afternoon. Juror no. 12 was questioned on the record, in the presence of both the defendant's counsel and the prosecutors, with their consent. At all times during this limited ten-minute inquiry, juror no. 12 was under the supervision of the court. The court adjourned for the evening at 4:55 p.m. There is no evidence that juror no. 12 was exposed to improper influences during this separation which may have prejudiced the defendant.
{¶ 12} The defendant's counsel had the opportunity to question each juror regarding his or her ability to render a fair and impartial verdict. The defendant makes no allegation of juror misconduct but instead argues that it is the misconduct of a third party. At no time did the defendant's counsel object or move for a mistrial. In fact the court found no grounds to excuse any of the jurors and defense counsel agreed with the court. (TR. 911-912).
{¶ 13} Again, the defendant's counsel did not object when the court permitted juror no. 12 to be questioned on the record regarding the identity of the spectator after being excused for deliberation. Defense counsel did not request a mistrial or a new trial. Therefore, the defendant has waived all but plain error.
 It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.
State v. Childs (1968), 14 Ohio St.2d 56, 236 N.E.2d 545, paragraph three of the syllabus.
 Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long, supra, 53 Ohio St.2d 91, 7 Ohio Op.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland
(1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899.
State v. Phillips (1995), 74 Ohio St.3d 72, 83, 656 N.E.2d 643, 658.
In State v. Williams (1974), 39 Ohio St.2d 20,313 N.E.2d 859, paragraph two of the syllabus, the Ohio Supreme Court held as follows:
 A noncapital felony conviction will not be reversed for error in permitting the jurors to separate for lunch after the case has been submitted to them, where it is not shown that the defendant was thereby prevented from having a fair trial and where the defendant did not object to the separation. (R.C. 2945.33, construed; Parker v. State, 18 Ohio St. 88, modified; paragraph two of the syllabus in Cantwell v. State, 18 Ohio St. 477, overruled.)
{¶ 15} The defendant argues that the jurors believed the spectator to be related to the defendants, thereby prejudicing the defendant. There is no evidence that the jurors believed that the spectator was either related or unrelated to the defendants. Despite the defendant's contention that the trial judge intruded upon the deliberation process, we do not find that this limited intrusion prejudiced the defendant or that she did not receive a fair trial. The limited questions surrounding the identification of the spectator did not concern the jury deliberation process or unduly intrude upon it.
{¶ 16} The Supreme Court of Ohio addressed concerns surrounding the impact of a spectator's actions upon jury deliberations in State v.Bradley (1965), 3 Ohio St.2d 38, 40-41, 209 N.E.2d 215, 217, and stated:
 These considerations depend upon factual matters properly reposing within the sound determination of the trial judge and his findings thereon will not be disturbed on review in the absence of evidence on the face of the record clearly and affirmatively showing that the jury was improperly affected thereby to the defendant's prejudice. See Lash v. United States, 221 F.2d 237 (juror questioned by court in presence of jury after his wife was observed talking with defendant's wife); State v. Bolle (Mo.), 201 S.W.2d 158
(spectator stated in court in course of motor vehicle manslaughter trial that his daughter was killed at the same place); State v. Franklin, 167 Kan. 706, 208 P.2d 195
(mother of victim of homicide arose in course of trial and screamed repeatedly, "he killed my son"); Hanye v. State, 211 Ala. 555, 101 So. 108 (weeping demonstration by widow of victim of homicide); and State v. Wimby, 119 La. 139, 43 So. 984 (expressions of grief by mother of victim of homicide).
 In none of the foregoing cases was the incident mentioned found to be prejudicial to the rights of the defendant at the trial, nor was that finding reversed on review.
In Bradley, the Court reasoned that the trial judge was positioned to "observe the demeanor, attention, attitude and maturity with which the jurors approached their task." Bradley at 41.
We find that the attempt to identify the spectator does not rise to the level of affecting the outcome of the trial. There is no evidence that this negatively impacted the deliberation of the jury or that the defendant was prejudiced by the questioning. The State presented substantial direct and circumstantial evidence against the defendant. We do not find that, but for the trial court's action, the outcome of the trial would have been different, nor do we find plain error. The defendant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., AND COLLEEN CONWAY COONEY, J., CONCUR.
[1] R.C. 2913.51.
[2] R.C. 2923.24.
[3] R.C. 2921.13.
[4] R.C. 2909.05.
[5] R.C. 2903.13.
[6] R.C. 2923.02/2909.06.
[7] For purposes of our review we assume that defendant intended to rely upon Crim.R. 24(G), captioned Control of Juries, rather than Crim.R. 24(C), captioned Peremptory Challenges.